STATE OF INDIANA ON RELATION OF THE CITIZENS NATIONAL BANK *v.* SUPERIOR COURT OF MADISON COUNTY, SCHRENKER, JUDGE.

[No. 29,374. Filed December 21, 1956.]

*Ross, McCord, Ice & Miller,* of Indianapolis, for relator.

*Rochford, Blackwell & Rochford,* of Indianapolis, for respondents.

LANDIS, J.—Relator has brought original action for writ of prohibition in this court seeking to have respondent court restrained from taking any further action relative to two petitions filed in respondent court by beneficiaries of the Ray Trust who had asked that relator as trustee thereof, be required to file in respondent court an inventory, and that a receiver and successor trustee be appointed. We issued the alternative writ prayed for by relator.

A statement of the facts necessary for consideration of the petition and respondent's response follows:

In October 1942, relator as trustee, entered into a trust agreement with one Ray, the settlor, according to which a trust was established for the benefit of the settlor's wife and two minor children. Said trustee immediately took possession of a $15,000 insurance policy, the *res* of said trust. Simultaneously with the

execution of the trust agreement in October 1942, the said Ray also executed his will disposing of the bulk of his estate. In August 1943 the settlor died, and on September 2, 1943, his will was probated with relator qualifying as his executor. On March 7, 1946, the estate was closed and relator discharged as executor. Pursuant to decedent's will a large portion of his estate was devised to relator as trustee to be held in accordance with the *inter vivos* trust agreement of 1942, and relator as trustee, upon the closing of the estate, received from itself as executor, pursuant to authority asked for in the final report, the trust property so devised to it. The court proceedings pertaining to the trust are that relator as trustee under the will on September 2, 1943, filed petition with the clerk of the Madison Circuit Court, in vacation, to open the trust which was granted, subject to the approval of the court in term time, and relator also filed its acceptance of the appointment. On October 4, 1943, the court by blanket order approved the action previously taken by the clerk in vacation. On April 5, 1946, relator as trustee filed in the Tipton Circuit Court its petition opening the trust and rendering its accounting to date. Thereafter numerous trust reports and accountings were from time to time considered and acted on by the Tipton Circuit Court. Nine and one-half years after the trust was opened in the Tipton Circuit Court, to-wit, on September 20, 1955, one of the surviving beneficiaries filed in the Madison Superior Court (the successor by statute to the Madison Circuit Court), respondent herein, a petition requiring relator to file in respondent court an inventory and asking for appointment of a receiver. Respondent court made an *ex parte* order requiring relator to file an inventory in respondent court by October 7, 1955. On October 8, 1955, relator filed in respondent court its answer to the

petition and reply to the answer was thereafter filed. On November 17, 1955, the other surviving beneficiary under the trust filed in respondent court petition to require relator to file inventory in respondent court, and asked that a successor trustee be appointed.

Relator here seeks writ of prohibition against respondent court, contending the Madison Circuit Court (and its successor, the Madison Superior Court) never had jurisdiction of the Ray Trust, which trust relator contends was created by the trust agreement of 1942 and not by the contemporaneous will.

Relator's first contention is that no valid steps were taken to open the trust in the Madison Circuit Court but the proceedings in which the clerk in vacation on September 2, 1943, attempted to open the trust and appoint the trustee were invalid and of no legal effect.

The statute at such time in force and effect pertaining to the powers of the clerk in vacation provided:

"For the purpose of granting probate of wills, issuing letters testamentary and of administration, filing reports, accounts and petitions of executors and administrators, filing claims against the estates and issuing process and notices required by this act, the clerks of the circuit courts shall keep the courts open in the vacation thereof; and such business done by a clerk shall be subject to the supervision of the court at the next ensuing term." Acts 1881 (Spec. Sess.), ch. 45, §2, p. 423, being Burns' Indiana Statutes (1933), §6-102.[1]

It is apparent from an examination of this statute that it makes no reference to trusts whatever, and that the clerk of the court, in proceeding to open the trust in vacation, was acting without statutory authority. It is well settled that although a clerk

---

1. It will be noted that the Probate Code of 1953 now expressly confers upon the clerk certain powers in vacation with respect to trusts.
See: Acts 1953, ch. 112, §108, p. 295, being Burns' §6-108, 1953 Repl.

of the court may perform acts of a ministerial and non-discretionary character with respect to judicial proceedings, such clerk has no judicial powers in the absence of specific statutory or constitutional authority. When judicial or quasi-judicial powers are expressly conferred upon clerks of court, the clerk's authority is strictly limited within the terms of the statutory or constitutional provision conferring it. See: 14 C. J. S., Clerks of Courts, §§35 and 36, p. 1243.

We are accordingly constrained to hold that the action of the clerk in vacation in the case at bar purporting to grant the petition for the opening of the trust was illegal and void.[2] The subsequent blanket order of the court in term time approving the previous acts of the clerk in vacation could not serve to validate a previously illegal act of the clerk in granting a petition for the opening of a trust.

Relator next contends the Tipton Circuit Court has jurisdiction of the trust as the trust was a valid *inter vivos* or living trust; that the trust was not a testamentary trust and therefore was not under the jurisdiction of respondent court; relator contends the Tipton Circuit Court has exercised jurisdiction over said trust since April 25, 1946, when relator filed in the Tipton court its petition to open the trust, and thereafter over a period of nine and one-half years in such Tipton Circuit Court filed numerous accountings, reports, and petitions in relation to the trust which were considered, approved, and acted upon by such court as was appropriate. Relator further contends the Tipton Circuit Court had jurisdiction of the trust in the county in

---

2. See: 11 C. J., Clerks of Courts, §84, note 87, p. 891; *Moore* v. *Fannin*, 7 Ind. Terr. 580, 104 S. W. 842, holding a statute conferring power on the clerk in vacation to grant letters of guardianship does not carry the power to appoint a curator for a minor in vacation.

which relator Citizens National Bank, as trustee, has its principal and only office, the same being in Tipton County, Indiana.

In reply to relator's contentions respondent says the trust was a testamentary trust rather than an *inter vivos* trust for the reason that the provision of testator's will devising his property "unto the Citizen's National Bank of Tipton, . . . as trustee, to be held by it under and in accordance with the terms of a certain trust agreement heretofore entered into this day by and between said trustee and myself" was invalid as Ray, the testator and settlor, retained the right to revoke the trust, and the only way the trust can be sustained is as a testamentary trust.

Respondent quotes in support of his position Henry's Probate Law (6th Ed., Vol. 2, §19, p. 1169, note 47) as follows:

"[There was a general rule before the adoption of the Probate code of 1953, Burns' §6-601 (j), which forbade] the bequest to a fund established by another instrument which [could] be changed inter vivos after the will [was] executed."

No authority is given in Henry's Probate Law, however, for this general rule which respondent has cited.

The annotation in 21 A. L. R. (2d) 220 collects many cases and states the general rule to be contrary to that set forth in Henry's Probate Law and Practice. We quote from page 221 of the annotation:

"Except for the decision rendered in one New York case and two federal decisions dealing with Rhode Island law (later departed from in the light of subsequent Rhode Island decisions), the view generally taken has been that a testamentary provision incorporating into the will the terms of an existing (or supposedly existing) trust, or making a gift to the trustee, is not invalidated by the circumstance that the trust instrument contains a

provision reserving to the settlor the power to change or revoke the trust . . . ."[3]

The next question before us for consideration in determining whether the Tipton Circuit Court or respondent court has jurisdiction of the trust depends upon whether the trust is considered to be an *inter vivos* trust, of which a court of equity has jurisdiction, or a testamentary trust, the jurisdiction of which is vested in a court of probate.

The most recent discussion of the relationship and effect of testamentary "pourover" provisions upon existing *inter vivos* trusts, and whether the end result is the augmenting of the *inter vivos* trust or the creation of a new testamentary trust is treated in 1 Scott, The Law of Trusts (2d Ed.) 1956, §54.3, p. 382, as follows:

*"Whether the inter vivos trust is augmented or a separate testamentary trust is created.* Where a person who has created a trust in his lifetime dies and by his will leaves property to be added to the trust, the question arises whether this additional property is to be treated as part of the original trust estate or whether it is to be treated as held upon a separate trust. Certainly the testator intends by his will to authorize the trustee to treat the property left by his will as an addition to the trust created inter vivos, the whole to be administered as a single trust. If in the instrument of conveyance he has reserved the right to add further property to the trust, the trustee is undoubtedly authorized to deal with all the property as a unit. Even where the instrument of conveyance does not expressly authorize the trustee to receive additional property from the settlor, it

---

3. The authorities of course recognize that a non-testamentary change in or revocation of the trust subsequent to execution of the will or any codicil cannot operate as a change of the will, but no contention is made in the case before us that such a change was made or attempted.

For cases see: 21 A. L. R. 2d pages 220, 222.

is believed that it would not be improper for the trustee to administer the whole of the property as a single trust.

"A further question may arise as to the supervision of the trust by the court. At common law a court of equity had jurisdiction over all trusts, whether created inter vivos or by will. In some states courts of probate are given jurisdiction over both kinds of trusts. A difficulty arises in states in which different courts have jurisdiction over testamentary trusts from those which have jurisdiction over trusts created inter vivos, or where it is the duty of a trustee to render an account in court in the case of a testamentary trust but not in the case of a trust created inter vivos. Where the settlor of a trust created inter vivos leaves additional property by his will to be held upon that trust, is the trust to be treated as an inter vivos trust, or as a testamentary trust, or is it to be treated as two trusts? It is believed that it should be treated simply as an inter vivos trust, the property of which has been augmented by the will. The executor of the will is under a duty to pay over the property to the trustee of the living trust, and in his accounting it should be sufficient for him to show that he has done this. Thereafter the trust will be treated as any other trust created inter vivos. Certainly the mere fact that property has been added by the will to the trust does not make the whole trust a testamentary trust, subject to the supervision of a court which has jurisdiction only over testamentary trusts; nor should it be held that there are two separate trusts."[4]

We believe sound reasoning impels us to come to the conclusion in the case before us that the trust here created was an *inter vivos* trust augmented by testamentary "pourover" provisions of a contemporaneous will as contended by relator, rather than a testamentary trust as contended by respondent.

---

4. For cases in support of the quoted text see cases cited on pp. 382-384 of Vol. 1, Scott, The Law of Trusts (2d Ed.) 1956.

144

Respondent's next assertion is that no valid *inter vivos* trust was created by settlor's contemporaneous trust agreement for the reason that a $15,000 ■ life insurance policy was not a sufficient trust *res*, but merely representing a set of directions for the trustee. Respondent's contention, which is not supported by authority, is completely at odds with the following discussion appearing in the Restatement of the Law of Trusts (comment f of §57) which states the correct rule:

"f. *Insurance trusts.* If a person takes out a policy of insurance upon his life payable to a third person as trustee, the intended trust is not testamentary although the insured person reserves power to change the beneficiary of the policy and power to revoke or modify the trust. In such a case a present trust is created, the beneficiary of the policy holding his rights as beneficiary in trust (see §84, Comment b). This is true whether the beneficiary of the policy is designated in the policy as trustee, or whether the policy is payable to him without mention of any trust but he agrees with the insured to hold the policy or its proceeds in trust for a designated person. The result is the same where the policy is payable to the insured person or his estate and is transferred by him to another person as trustee. The disposition is not invalid although the trustee has no active duties to perform until after the death of the insured."

It has been further contended by respondent that jurisdiction over the trust was acquired by respondent court by the answer filed by relator in the proceeding below in such court admitting the jurisdiction of said court. This is of no importance, as the Tipton Circuit Court had already acquired jurisdiction of the administration of the trust, and the same could not be conferred upon respondent court by admission or agreement of the parties. See: *In re*

*Gray's Estate* (7th Cir. 1933), 66 F. 2d 367, 370; *Isbell* v. *Heiny, Administrator* (1941), 218 Ind. 579, 33 N. E. 2d 106; *Finkenbiner* v. *Dowd* (1952), 231 Ind. 416, 108 N. E. 2d 261; *State ex rel. Allison* v. *Brennan* (1951), 229 Ind. 281, 97 N. E. 2d 925. A further contention has been made that the Tipton Circuit Court could not obtain jurisdiction of the trust because relator's previous attorney became judge of that court on January 1, 1947. That circumstance could not affect proceedings taken eight months prior thereto, when relator petitioned the court for the opening of the trust, and the court assumed jurisdiction over the same. If an interested party to the trust became dissatisfied with a subsequent judge of the Tipton Circuit Court he should have made his objections a matter of record in the lower court, but as he has not done so, he has not now a cause for complaint.

We conclude it is apparent from the foregoing discussion that a valid and subsisting *inter vivos* trust was created by the trust agreement of 1942 which was added to by the provisions of the contemporaneous will, that no new testamentary trust was created, and therefore the Tipton Circuit Court was the only court acquiring jurisdiction of the trust, and the respondent court should be permanently enjoined from attempting to interfere with the administration of the trust by the Tipton Circuit Court.

The alternative writ of prohibition is made permanent.

Achor, C. J., not participating.

Arterburn, Bobbitt and Emmert, JJ., concur.

NOTE.—Reported in 138 N. E. 2d 900.