Augustino INGOGLIA, Rosemarie
Ingoglia, Ronald Partyka and
Joyce Partyka, Appellants,

v.

THE FOGELSON COMPANIES, INC., an
Illinois Corporation, and William T. Mamelson, Appellees.

No. 64A04–8603–CV–87.

Court of Appeals of Indiana,
Fourth District.

Nov. 28, 1988.
Rehearing Denied Jan. 12, 1989.

Edward P. Grimmer, Barber & Sorbello, P.C., Crown Point, for appellants.

Daniel A. Gioia, Spangler Jennings Spangler & Dougherty, P.C., Merrillville, Patrick J. Galvin, Galvin, Galvin & Leeny, Hammond, for appellees.

MILLER, Judge.

Plaintiffs Augustino and Rosemarie Ingoglia brought suit in Porter Superior Court against The Fogelson Companies, Inc., developer of their subdivision, and William J. Mamelson, the engineer who designed the storm drainage and water retention systems, for monetary and injunctive relief after their home flooded. Ronald and Joyce Partyka, neighbors whose home also flooded, sought to intervene as plaintiffs but their motion was denied. The Partykas then brought an identical suit against the same defendants in Lake Circuit Court which was venued to Jasper Circuit Court. During the Ingoglias' jury trial in Porter Superior Court, all parties entered into a settlement agreement which was then made the order of both the Porter Superior Court and the Jasper Circuit Court. The Fogelson Companies, Inc. [Fogelson] failed to perform all of its obligations under the two consent judgments. Both homeowners filed petitions to enforce the judgments in their respective courts. Jasper Circuit Court ordered the Partykas' case transferred to Porter Superior Court and consolidated with the pending Ingoglia cause. Porter Superior Court then denied the plaintiffs' petition to enforce the judgment and granted Fogelson's motion to modify judgment, finding Fogelson had substantially performed and its conduct did not invoke the penalty clause of either consent judgment.

The Ingoglias' and Partykas' appeal and raise four issues, which we have restated and consolidated as follows:

I. Whether the Jasper Circuit Court and Porter Superior Court acted without authority in transfering the Partykas' cause from Jasper Circuit Court to the Porter Superior Court and consolidating it with the Ingoglia cause in Porter Superior Court;

II. Whether the findings of fact and conclusions of law in the Porter Superior Court's order of December 6, 1985, were supported by the evidence; and

III. Whether the Porter Superior Court erred as a matter of law in modifying the consent judgment as originally approved and entered by both the Jasper

Circuit Court and the Porter Superior Court.[1]

We reverse and remand.

## FACTS

Augustino and Rosemarie Ingoglia and Ronald and Joyce Partyka purchased homes and are neighbors in the Pine Island Ridge Subdivision located in Lake County, Indiana. Their homes are located near a stream and a pond. The Fogelson Companies, Inc., an Illinois corporation, developed Pine Island and William T. Mamelson designed the storm drainage and water retention systems. After moving in, the Ingoglias and Partykas discovered their homes and property flooded during heavy storms. Both their homes and their household goods sustained water damage as a result of the flooding.

The Ingoglias and Partykas individually retained the same attorney to represent them. The Ingoglias initially filed suit in Lake Circuit Court against Fogelson and Mamelson, alleging their home and the storm drainage and water retention systems within the subdivision were improperly designed or constructed. The Ingoglias alleged the cause of the flooding problem was that the storm water retention pond located near their home was too small to collect the storm water that accumulated during heavy rainstorms. The Partykas sought to intervene as co-plaintiffs against Fogelson and Mamelson. Both defendants objected and the court sustained the objections. At defendants' request, the Ingoglias cause was venued to Porter County. Partykas then filed their nearly identical complaint in Lake Circuit Court and defendant Fogelson moved for change of venue, striking Porter County and effectively preventing consolidation of the two cases prior to trial. Venue was later perfected to Jasper Circuit Court. Both causes sought money damages for water damage that had occurred in the past and an injunction to provide corrective relief from the flooding problem in the future.

The Ingoglias proceeded to trial in January, 1985. During the second day of jury trial, the four parties reached a settlement which was approved by the Porter Superior Court and made its order. The agreement settled both the Ingoglias' and the Partykas' claims against both Fogelson and Mamelson and provided it was to be filed with the Jasper Circuit Court. The Porter Circuit Court order of January 30, 1985, reads in pertinent part:

"The parties have reached an agreement to amicably resolve this case and have agreed and stipulated that the settlement of all the claims and disputes shall be as follows and pray the Court to enter an order in accordance with this agreement and stipulation:

1. The Defendant Fogelson Companies, Inc., or its principal shareholder shall immediately issue a check in the amount of $35,000.00 (thirty-five thousand dollars) to Augustino and Rosemarie Ingoglia and Ronald and Joyce Partyka, and the same shall be delivered immediately to the attorney for the Plaintiffs.

2. The Defendant William T. Mamelson or its representative shall issue a check in the amount of $15,000.00 (fifteen thousand dollars) to the same aforementioned individuals, said check to be delivered to the Plaintiffs' attorney ...

3. Upon receipt of the foregoing $50,-000.00 (fifty thousand dollars), the attorney for the Plaintiffs shall cause to be entered ... partial satisfaction of judgment ...

4. The Defendants further agree that they shall cause to be designed and constructed a storm drainage modification relative to the real estate ... Said storm drainage system is to be designed by William T. Mamelson so as to meet the design criteria established and agreed to by the parties and set forth in Exhibit A attached hereto. Mr. Mamelson will im-

---

1. Mamelson, while an appellee in this case, admits that the construction ordered in the judgment has not yet been performed and he has therefore been unable to certify completion of his work as required by the consent judgment.

Mamelson argues Fogelson's failure to perform its obligations under the consent judgment is entirely responsible for both any delays and Mamelson's inability to certify the completion of the project.

mediately undertake to cause plans for the requisite engineering of the proposed system. Upon completion of said plans, the same shall be submitted to Patrick Haas and Associates for his review and approval. Thereafter, the plans shall be submitted to the necessary and appropriate municipal authorities of the Town of Schererville and the Pine Island Ridge Community Association for any required approvals. After said approvals have been obtained, the Fogelson Companies, Inc., shall cause to be constructed at its expense by a contractor of its choice the modified improvements pursuant to the plans prepared by Mr. Mamelson.

The time schedule for the foregoing shall be as follows:

A. Mr. Mamelson shall complete the preparation of the plans by March 1, 1985, and the said plans shall be delivered to Patrick Haas on or before that date.

B. Patrick Haas shall have seven days after receipt of the plans to review and approve same.

C. Any proposed revisions by Haas shall be worked out and completed by William T. Mamelson within two weeks thereafter.

D. Upon approval of the plans by Haas and Mamelson, they shall be immediately delivered to the appropriate authorities of the Town of Schererville and the Homeowners Association for their review and acceptance.

E. Following the approval and acceptance by the appropriate authorities of the Town of Schererville and the Homeowners Association, the Fogelson Companies, Inc., will enter into a contract for the construction of the improvements within 21 days.

F. Construction of the work on the new pond shall be completed on or before July 15, 1985, and any remaining items shall be completed as soon as practical thereafter, but not later than September 15, 1985. The Fogelson Companies, Inc., agrees to pay a per diem penalty of $175.00 (One hundred seventy-five dollars) to Mr. and Mrs.

Ingoglia and Mr. and Mrs. Partyka if the construction is not completed by July 15, 1985, completion date shall be extended in the event of any delays caused by acts of God and or extreme weather conditions, if the same have been certified to by the engineer. The Engineer, William T. Mamelson, has further agreed that he will supervise the construction of the improvements contemplated herein. As part of the plans for the improvement contemplated herein, William Mamelson shall establish finished grade levels for Lots 31 and 33 of Pine Island Ridge Subdivision so as not to cause any adverse storm water effect on the adjoining lots, and thereafter a restrictive covenant shall be placed of record on said Lots 31 and 33.

This agreement and the order to be entered hereon is intended to fully satisfy all the obligations of the Defendants with respect to any of the claims being made by the Plaintiffs to this action and by the Plaintiffs in the companion case brought by Mr. and Mrs. Partyka which is pending in Jasper Superior Court. Upon fulfillment of the obligations provided for herein by the Defendants, the Plaintiffs to this action shall execute a release in favor of all of the Defendants in a form satisfactory to the attorneys for said Defendants, which release shall, among other things, fully discharge said Defendants and their assigns and successors from any and all liabilities arising out of the claims made by these Plaintiffs and the Plaintiffs in the Jasper County Superior Court case. Said release shall be binding upon all of said Plaintiffs and their successors in interest to the real estate which they own and which is the subject matter of these respective lawsuits.

The payment of said monies as aforesaid and the completion of the improvements as contemplated herein per the design specifications as approved shall be the full and total obligation and commitment of the Defendants and they shall have no other responsibilities or liabilities to said Plaintiffs with respect to the claims and

causes of action pending in this case or the companion case in the Jasper Superior Court.

The parties do further agree that each and every one of them shall use their very best efforts and give full and complete public and private support before the town officials of the Town of Schererville, any town boards or commissions as well as the Property Owners Association to obtain the necessary approvals in order to efficiently and quickly expedite the completion of the improvements to be made.

The attorneys for the parties further agree that they will cause a copy of this order to be filed in the companion case brought by Mr. and Mrs. Partyka which is pending in the Jasper Superior Court, and when the Defendants have fulfilled all of their obligations pursuant to this order, in addition to executing the aforementioned releases, the attorney for the Plaintiffs will join with the attorneys for the Defendants in causing a stipulation to dismiss both cases with prejudice, or, in the alternative, the attorney for the Plaintiff will cause an appropriate entry in both cases showing that this order and the judgment in connection therewith has been fully satisfied.

So ordered this 30th day of January, 1985."

Record, pp. 17–22.

Within three days after entry of judgment, Fogelson satisfied its monetary obligation under the judgment by delivering checks in the amount of $35,000.00 payable to the Ingoglias and the Partykas to their attorney. Fogelson then awaited preparation of the design plans for the revised storm water drainage system. When plans were received, Fogelson requested bids and discovered the cost of construction would be $130,000.00 Fogelson now claims it was represented and understood among the defendants at the time of judgment that the cost of the new drainage system would be $30,000.00. Specifically, Fogelson, Mamelson and both of their respective attorneys discussed three design plans and their cost: (1) Michael Fink's design, estimated to cost $22,000 (Fink was employed as town engineer); (2) Mamelson's design, estimated to cost $30,000; and (3) Haas's design, estimated to cost $100,000. Fogelson claims the defendants agreed to spend $22,000–30,000 during their own meeting regarding potential settlement. The Ingoglias and Partykas dispute that any specific monetary cap was ever discussed or suggested to them to be included in the settlement, and that the terms of the agreement specify only that Fogelson will bear the cost of making the system operate correctly.

Mamelson submitted revised plans to Fogelson over the next few weeks but then withdrew them. Fogelson consulted other engineers and the Town of Schererville in search of a cheaper, more environmentally pleasing design for drainage. On April 25, 1985, the Fogelson Companies hired Bevins Consultants, Inc. [Bevins] to determine whether the plans submitted by Mamelson and Haas pursuant to the consent judgment were "incorrect, overdesigned, and inappropriate."

On May 13 and 14, 1985, the homeowners submitted the Mamelson and Haas plans to the Town of Schererville and the Pine Island Ridge Community Association and secured approval from both bodies.

On May 30, 1985, the Partykas filed a Petition to Enforce Judgment in Jasper Circuit Court. On June 13 and July 2, 1985, respectively, the Porter Superior Court and Jasper Circuit Court entered similar orders that Fogelson post performance bond on or before July 2, 1985, be enjoined from disposing of its assets within the State of Indiana, and on July 16, 1985 begin paying the per diem penalty provided in the court's judgment.[2]

The record is not clear but apparently Bevins provided an alternate engineering design to Fogelson, and this new design was submitted to Mamelson but was never submitted to plaintiffs or to their attorney. The record is also unclear as to when Fogelson hired the Vic Kirsch Construction

2. These orders were entered after the court found Fogelson had not complied with the trial court's order that the required performance be completed by July 15, 1985.

Company to perform the work and when construction actually began. During construction, several disputes arose regarding the design, its completeness and adequacy to solve the flooding problem.

Fogelson failed to post the bond or to begin performance by July 15, 1985. Actual construction of the modifications to the drainage system began August 15, 1985. The record does not disclose if or when the construction was completed and the system began functioning. The Partykas requested an order to show cause and hearing in Jasper Circuit Court. On August 1, 1985 Fogelson filed a Motion to Modify Judgment in Porter Superior Court, asking that the court's June 13 order be vacated, the penalty provision not be enforced, and the original judgment be modified. The Porter Superior Court vacated its June 13 order. On September 18, 1985, the Jasper Circuit Court, *sua sponte*, ordered the Partyka case transferred to Porter County and consolidated with the Ingoglia cause. On October 1, 1985, the Porter Superior Court Clerk received the Jasper court order and the Partyka record and consolidated the Partyka case with the pending Ingoglia cause.

On October 15, 1985 the Ingoglias filed another Petition to Enforce Judgment. Hearing was held November 5, 1985 and evidence reopened on November 20, 1985. This evidence alleged in part that the Partykas' home had suffered water damage on November 18, 1985. The Porter Superior Court entered the following judgment on December 6, 1985:

> "This cause came to be heard on the 5th day of November, 1985, on plaintiffs' Petition to Enforce Judgment at the request of counsel for the plaintiffs and upon this Court's Order to hear any and all unresolved matters relating to this Court's Order of January 30, 1985, AND the Court having heard evidence thereon and having considered several affidavits submitted by counsel for plaintiffs subsequent to the hearing on November 5, 1985, and being duly advised in the matters presented as the result of several previous hearings and conferences with counsel for the parties and as a result of

> the Court having visited the site of the construction of the storm drainage modification (hereinafter referred to as 'retention pond') in question at the request of the attorneys for the plaintiffs and the defendant, The Fogelson Companies, Inc., the Court NOW FINDS DETERMINES AND ORDERS AS FOLLOWS:

> 1. That this Court entered an Order herein on January 30, 1985, pursuant to which defendant, The Fogelson Companies, Inc. was to pay to the Plaintiffs the sum of $35,000.00 and construct a retention pond which was to be designed by the defendant, William T. Mamelson, the anticipated cost for the construction of said pond being approximately $30,000.00.

> 2. That within three (3) days of entry of said Order Fogelson paid to the Plaintiffs the sum of $35,000.00.

> 3. That thereafter Mamelson designed a retention pond without consultation with Fogelson and when said plans were submitted for bid, the bid for the cost of construction was approximately $140,000.00.

> 4. That thereafter and throughout, The Fogelson Companies, Inc. promptly endeavored to fulfill its obligation to comply with the Court's Order of January 30, 1985, first by employing an expert engineering firm to explore the possibility of designing a more economically feasible and environmentally pleasing drainage plan at less expense and second, and ultimately, by causing to be constructed by the Vic Kirsch Construction Company a retention pond substantially in conformance with that designed by Mamelson except that, as installed, it is a dry pond rather than a wet pond the same being a variation from the Mamelson plans accomplished at the direction of the defendant, Fogelson Companies, Inc., upon the request of the plaintiffs after construction had begun.

> 5. That by the time of the hearing on November 5, 1985, and for a substantial period prior thereto, the pond had been functioning and the defendant, Fogelson

Companies, Inc. had fulfilled its obligations with respect thereto.

6. That the penalty clause contained in this Court's Order of January 30, 1985, requiring the payment of $175.00 to the plaintiffs pertained only to any failure of the defendant, Fogelson Companies, Inc. to have the retention pond operational by July 15, 1985, and the retention pond is now and has been operational for some time and any failure to have the retention pond completed and operational by said date was not due to any failure on the part of Fogelson Companies, Inc. to diligently comply with its obligation under said Order, but rather, was the result of the wholly unforeseeable, unexpected and unanticipated dimension in size and cost of the retention pond designed by Mamelson. IN ACCORDANCE with the foregoing, the Court finds that the defendant Fogelson Companies, Inc., has complied with its obligations to pay damages to the plaintiffs in the sum of $35,-000.00 and to construct a retention pond for their benefit and that the plaintiffs are not entitled to any per diem penalty under this Court's Order of January 30, 1985, and the Petition of the Plaintiffs to Enforce Judgment is hereby denied."

It is from this judgment the homeowners now appeal.

### DECISION

#### I. *Transfer and Consolidation*

The Partykas contend that the Jasper Circuit Court was without authority to, *sua sponte,* transfer their motion to enforce judgment to Porter Superior Court and order their motion consolidated with the Ingoglias' pending motion to enforce judgment.[3] Although the Jasper Circuit Court's order does not specify which, if any, trial rule it based its action upon, only Ind.Rules of Procedure, Trial Rule 42(A) provides for consolidation of cases.

Trial Rule 42(A) provides:

"(A) Consolidation. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."

Fogelson contends that "by voluntarily submitting their claims against Fogelson to the Porter Superior Court for approval, and causing a consent judgment to be entered, the Partykas invoked the jurisdiction of that court and are now estopped to question its authority to enforce the very decree they asked the court to enter." We find neither the law nor the facts support Fogelson's argument that the Partykas submitted to the jurisdiction of Porter Superior Court.

The law supports the Partykas' claim that the Porter Superior Court did not acquire jurisdiction over their suit filed in Jasper Circuit Court. Jurisdiction is a question of law and parties cannot stipulate as to matters of law. *Wireman v. Fairchild* (1983), Ind.App., 450 N.E.2d 1011. Once a court of competent jurisdiction acquires jurisdiction over a cause, that jurisdiction cannot be conferred upon another court, even by agreement of the parties. *State ex rel Citizens National Bank v. Superior Court of Madison County* (1957), 236 Ind. 135, 138 N.E.2d 900. When a court acquires jurisdiction of subject matter and persons in a particular case, as when the Partyka case was venued from Lake County to Jasper Circuit Court upon defendants' motion, that court retains jurisdiction to the exclusion of all other courts of concurrent jurisdiction. *State ex rel. Coleman v. Hendricks Superior Court II* (1979), 272 Ind. 40; 396 N.E.2d 111; *State ex rel. Poindexter v. Reeves* (1952), 230 Ind. 645, 104 N.E.2d 735; *Brown v. Doak Co.* (1922), 192 Ind. 113, 135 N.E. 343. Porter Superior Court must first have subject matter jurisdiction before there can be

---

3. Alternately, the plaintiffs contend that Fogelson is estopped from seeking transfer or consolidation because of its actions earlier in objecting to the Partykas' intervention and then in striking Porter County, effectively preventing consolidation. We need not reach this issue because of our disposition of the Partykas' first allegation of error regarding consolidation.

any test of the Partykas' acquiescence in personal jurisdiction. *State ex rel. Carr v. Marion Superior Court, Room 4* (1961), 241 Ind. 403, 172 N.E.2d 668.

■ The record shows no appearance by the Partykas in the Ingoglia action, other than to seek and be denied intervenor status in Lake County before the Ingoglia cause was venued to Porter County and before the Partykas filed their initial claim in Lake County. The terms of the January 30, 1985 Porter Superior Court consent judgment clearly indicate the Partykas' cause of action was separate. In at least six places, the consent judgment recites that the Partyka action is distinct and is located in Jasper County. The Porter Circuit Court order clearly shows the parties were aware of and considered that there were two separate causes of action. Porter Superior Court had no jurisdiction over the Partykas' case on January 30, 1985 when it entered the consent judgment in the Ingoglias' case, so Fogelson's argument must fail.

■ In *Figg & Muller Engineers, Inc. v. Petruska* (1985), Ind.App., 477 N.E.2d 968, our court recently addressed the question of whether T.R. 42(A) authorizes a court of one county to order a case pending before it consolidated with a case pending before a court in a different county. Judge Garrard, writing for the court, concluded that T.R. 42(A) does not provide for intercounty consolidation of cases. Judge Garrard reasoned:

> "We believe the rule is clear on its face and not susceptible to the interpretation urged by Figg & Muller. The rule provides that '[w]hen actions involving a common question of law or fact *are pending before the court ... [the court] may order all the actions consolidated....' (our emphasis).*
>
> Figg & Muller encourages us to interpret the rule as if it provided:
>
> > 'When one or more actions pending before a court involve a question of law or fact in common with one or more actions pending before another

court, the first court may transfer the action(s) pending before it to the other court for consolidation with the other actions.'
>
> However, the plain language of Trial Rule 42(A) authorizes only consolidation of actions pending before the court; it does not authorize transfer of actions from one court's jurisdiction to that of another for consolidation."

*Figg & Muller Engineers, Inc., supra,* 477 N.E.2d at 969–70.

We agree with the holding of *Figg & Muller* that the clear and plain meaning of T.R. 42(A) establishes that consolidation is permitted only of those actions pending before one specific court in which the motion to consolidate is filed. We conclude the Jasper Circuit Court's order, transferring the Partyka case to Porter Superior Court and consolidating it with the pending Ingoglia case, was contrary to law.

The Porter Superior Court asserted jurisdiction over the Partyka cause by its Order of October 29, 1985 and vacated an Order of the Jasper Circuit Court. To protect the record, the Partykas objected to the Porter Superior Court's exercising of jurisdiction over the Partykas' cause and attempting to adjudicate by means of this Order and by vacating the Order of the Jasper Circuit Court. We conclude the Jasper Circuit Court was without authority to order the Partyka cause transferred and consolidated, and that the Porter Superior Court was without jurisdiction over the Partyka case. We therefore (1) vacate the Jasper Circuit Court Order of September 18, 1985 transferring and consolidating the Partyka cause; (2) vacate the Porter Superior Court order of October 29, 1985 which vacated the Jasper Circuit Court Order of July 2, 1985 requiring Fogelson to post performance bond and refrain from disposing of its assets within Indiana; (3) remand the Partyka cause to Porter Superior Court with instructions to return the Partyka case to Jasper Circuit Court for further proceedings consistent with this opinion.[4]

---

**4.** We need not address in resolving this appeal what binding effect the negotiations and agree-

ments between the Partykas and Fogelson might have in the Jasper Circuit Court proceedings.

II. *Findings of Fact and Conclusions of Law*

█ In its order of December 6, 1985, the trial court made findings of fact and conclusions of law. The Ingoglias assert the findings and conclusions are not supported by the evidence. We agree.

On review, the trial court's findings and conclusions will be reversed only if they are clearly erroneous. *Indiana & Michigan Electric Co. v. Harlan* (1987), Ind. App., 504 N.E.2d 301, 306. A finding or conclusion is clearly erroneous when on review of all the evidence we are left with a firm conviction a mistake has been made. *First Federal Savings & Loan Ass'n v. Stone* (1984), Ind.App., 467 N.E.2d 1226, 1234.

The court found the anticipated cost for the construction of the drainage system was approximately $30,000.00, and then concluded the failure to have the system completed by July 15, 1985, the date specified in the consent judgment, was "the result of the wholly unforeseeable, unexpected and unanticipated dimension in size and cost of the retention pond designed by Mamelson." The only evidence which supports the findings on the anticipated cost was Gerald Fogelson's testimony that Mamelson quoted this figure. However, Fogelson also testified during cross examination that prior to the consent judgment, Haas had estimated the cost to be $100,-000.00. Fogelson also testified the Ingoglias were not present during his discussion with Mamelson concerning the anticipated cost. There was no evidence the Ingoglias ever discussed the cost with Fogelson or agreed on an anticipated cost. Fogelson claims his testimony supports this finding, but the record shows (1) he discussed the cost with his attorneys and Mamelson and

(2) he admits neither the Ingoglias, Partykas nor their representatives were present during this discussion. At best, the evidence supports a finding *Fogelson believed* the cost would be $30,000.00. The fact Fogelson was aware of the $100,000.00 estimate prior to the agreement does not support the conclusion the cost was wholly unforeseeable.

The court also concluded Fogelson had constructed a retention pond "substantially in conformance with that designed by Mamelson...." We have searched the record in vain to find any evidence the retention pond actually constructed was in conformance (substantially or otherwise) with either Mamelson's design or the criteria made a part of the original judgment.[5] The court's findings and conclusions are not supported by the evidence.

III. *Modification of Consent Judgment*

The Ingoglias argue the trial court erred in modifying its judgment because a consent judgment should be viewed as a contract, which can only be modified according to contract principles and that Fogelson presented no evidence which would entitle it to a modification under such principles.

Fogelson argues the consent judgment is a judicial act which should not be controlled by contract principles, but may be modified under Ind.Rules of Procedure, Trial Rule 60(B).

We note the first reference to T.R. 60(B) is in Fogelson's appellate brief. Fogelson does not indicate which section of the rule is applicable. However, a trial court has "inherent authority to entertain actions to determine whether a judgment has been carried out and satisfied." *North v. Newlin* (1982), Ind.App., 435 N.E.2d 314, 318.

---

5. The Ingoglias argue the trial court relied in part on improperly admitted evidence. This evidence consisted of two letters from Charles B. Truax, the president of Vic Kirsh Construction Co., the general contractor for the drainage system, and a letter from William Bevins, the president of Bevins Consultants Incorporated, a firm Fogelson employed to review the Mamelson design. The record is not clear, but it appears Bevins may have supplied the plans actually used for the construction. The Ingoglias objected to the admission of the letters on the basis of hearsay and because they contained purported expert opinions for which there was no foundation. We agree the letters were improperly admitted. However we decline to discuss this issue, because, even if the letters had been properly admitted, they contained no evidence the system which was constructed was in conformance with the agreement embodied in the consent judgment.

The problem presented to this court is to define the correct standard to be applied by the trial court to decide whether to modify a consent judgment. This court's task, therefore, is to identify the proper standard which should have been applied by the trial court and then evaluate whether the trial court's actions are proper under that standard.

■ Initially, we note that a consent judgment is both contractual, in that it is an agreement between the parties settling the underlying dispute, and an entry of judgment by the court with all that it means in committing the force of society to implement the judgment in its courts. *See, Hanover Logansport, Inc. v. Robert C. Anderson, Inc.* (1987), Ind.App., 512 N.E. 2d 465, and cases cited therein. Some courts and commentators focus upon the contractual nature of a consent judgment and construe such decrees by ascertaining the intent of the parties, relying upon traditional contract aids to construction. Other courts and commentators focus upon the fact that a consent judgment is a judgment of the court and possesses the same force of *res judicata* and collateral estoppel as any other judgment. Several competing policy concerns interact to determine whether a particular consent judgment is treated by the courts as primarily a result of its contractual nature or its approval and adoption by the court as a judicial act.

In *Hanover Logansport, Inc., supra,* our court resolved the specific question of whether a plaintiff who accepts an offer of judgment under Ind.Rules of Procedure, Trial Rule 68 which conforms to one of the alternative prayers for relief contained in his complaint may then seek additional damages arising from the same cause of action. Judge Staton, writing for the Third District, noted that the federal courts and state courts are divided on the question of whether a consent judgment operates as a bar to subsequent litigation. Judge Staton reasoned:

> "... T.R. 68 is intended to encourage settlements, discourage vexatious suits, and avoid protracted litigation. *See* 12

Wright & Miller, *Federal Practice and Procedure*, § 3001. Therefore, the result we reach here should serve those purposes.
Because we agree that if all issues and claims must be negotiated and dealt within a consent judgment or foregone forever, parties will be reluctant to enter into such agreements, we adopt the consent-judgment-as-contract theory and hold that the preclusive effect of a consent judgment must be measured by the intent of the parties. However, it must be clear that *both* parties have agreed to reserve an issue or claim. *And,* it must be precisely stated what issues or claims are being reserved." (Emphasis in original)

*Hanover Logansport, Inc., supra,* at p. 471.

■ We note that the consent judgment here was negotiated during jury trial and was entered by the court pursuant to Ind. Rules of Procedure, Trial Rule 54, Judgment, rather than T.R. 68, Offer of Judgment. However, we find the same policy concerns are appropriate here. The determination of whether a consent judgment may be modified, must be evaluated using contract principles.

■ Fogelson, however, asserts consent judgments may be modified if there are changed circumstances which make prospective application of the judgment no longer equitable. In support of this proposition, Fogelson cites *United States v. Swift & Co.* (1932), 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999. *Swift* involved an injunction in an antitrust case which required continuing supervision by the court. The judgment in question was entered more than ten years before the request for modification. *Swift* recognized a court of equity's inherent power to modify a judgment (whether by consent or after litigation) when changed circumstances make its prospective application inequitable.[6] The threshold question to be determined in deciding if a consent judgment may be modified because of changed circumstances is

---

**6.** Nevertheless, the Court did not modify the judgment in *Swift.*

whether the judgment has prospective application. Justice Cardozo, writing for the *Swift* Court, stated: "The distinction is between restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change, and those that involve the supervision of changing conduct or conditions and are thus provisional and tentative." *Id.* at 114–115, 52 S.Ct. at 462.

In *State v. Martinsville Development Co. Inc.* (1977), 174 Ind.App. 157, 366 N.E.2d 681, the court stated a judgment has prospective application "when a person's right to do or not to do some act is continuously affected by the operation of the judgment in the future; or, the judgment is specifically directed toward some event which is to take place in the future and does not simply serve to remedy *past* wrongs. (Emphasis in original). *Id.* at 163, 366 N.E.2d at 685.

 Here, the judgment served only to remedy past wrongs. It was not provisional or tentative and should not have involved continuing "supervision of changing conduct or conditions." *Swift, supra* 286 U.S. at 115, 52 S.Ct. at 462. Therefore, the court's modification was proper only if contract principles were correctly applied.

 In construing a consent judgment, the court must determine and effectuate the intent of the parties. *Hanover Logansport, Inc., supra.* If the language of the agreement is unambiguous and the intent of the parties is discernible from the written contract, the court must give effect to the terms of the contract. *Scott v. Anderson Newspapers, Inc.* (1985), Ind. App., 477 N.E.2d 553. "A contract is ambiguous if a reasonable person would find the contract subject to more than one interpretation." *Id.* at 559.

 Here, the trial court interpreted the penalty clause of the agreement. The penalty clause of the agreement in this case is unambiguous. It states in pertinent part: "The Fogelson Companies, Inc., agrees to pay a per diem penalty of $175.00 (One hundred seventy-five dollars) to Mr. and Mrs. Ingoglia and Mr. and Mrs. Party-

ka if the construction is not completed by July 15, 1985, completion date shall be extended in the event of any delays caused by acts of God and or extreme weather conditions if the same have been certified to by the engineer."

There was no evidence the construction was delayed because of acts of God or extreme weather, the only excuses for which the agreement made provision. The trial court apparently based its modification on the conclusion the delay was caused by the unanticipated size and cost of the design submitted by Mamelson. However, as we have discussed, this conclusion was not supported by the evidence. The trial court erred in refusing to enforce the penalty provision of the agreement.

The Ingoglias also assert the court abused its discretion in refusing to consider newly discovered evidence. After the hearing on November 5, 1985, the Ingoglias filed an affidavit by Mamelson describing the results of a survey of the construction site taken November 20, 1985. They also filed affidavits by Ronald Partyka and Augustino Ingoglia, which described the progress of the work. The Ingoglia affidavit also included exhibits which had previously been admitted into evidence in the July 2, 1985 hearing in the Jasper Circuit Court. As we discussed, there was no evidence in the record from which the court could have concluded the drainage system constructed by Fogelson was in conformance with the criteria incorporated in the agreement. It is probable the trial court will be required to hear evidence on this issue. Because the evidence submitted after the November 5, 1985 hearing has some bearing on this question, we decline to discuss this issue at greater length.

Reversed and remanded for further proceedings in accordance with this opinion.

CONOVER, P.J., and SULLIVAN, J., concur.