FILED
Jan 31 2020, 8:36 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANTS

R. Brock Jordan
Christopher M. Trapp
Katz Korin Cunningham PC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
SHERYLL (DURBIN) NOVICKI

Dennis F. McCrosson
Stephen R. Donham
Thrasher Buschmann & Voelkel, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
THE BOARD OF DIRECTORS OF
THE CORDRY-SWEETWATER
CONSERVANCY DISTRICT

Roger A. Young
Young and Young
Franklin, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Daniel L. Hess and Leanna S. Hess,

*Appellants-Plaintiffs,*

v.

Sheryll (Durbin) Novicki,

*Appellee-Defendant,*

and

January 31, 2020

Court of Appeals Case No.
19A-CT-1416

Interlocutory Appeal from the Brown Circuit Court

The Honorable Mary Wertz, Judge

Trial Court Cause No.
07C01-0906-CT-349

The Board of Directors of the
Cordry-Sweetwater Conservancy
District,

*Appellee-Intervenor*

**Crone, Judge.**

# Case Summary

This interlocutory appeal involves circumstances in which a trial court's continuing equitable authority over injunctions clashes with freedom of contract principles. The limited issue to be resolved is whether the trial court has the legal authority to rule on the merits of an Indiana Trial Rule 60(B) motion to supplement/modify an agreed permanent injunction entered by the parties to a boundary dispute and approved by the court. The trial court concluded that it possesses such authority, and we affirm.

# Facts and Procedural History

Cordry Lake is a private lake owned and governed by the Cordry-Sweetwater Conservancy District ("CSCD"), through its board of directors ("the Board"). The Board has the authority to regulate the use of the lake and the construction of any structures in the inlets. Daniel L. Hess and Leanna S. Hess own a lake-front tract adjacent to the lake-front tract owned by Sheryll (Durbin) Novicki.

A narrow inlet lies between their tracts. Per CSCD rules, each tract owner is entitled to unobstructed use of their half of the inlet, as determined by the use of a midpoint. In 2009, CSCD rules measured the midpoint of each inlet by using an imaginary line extending from the shore. At that time, Novicki sought to construct a dock/lift in the inlet. The Hesses filed an action against Novicki, seeking declaratory and injunctive relief concerning her construction of her dock and use of the inlet in a manner that allegedly encroached on their half of the inlet. They also named the Board as a defendant in their complaint.

[3] In 2015, Novicki and the Hesses entered mediation. In 2016, they executed an agreed permanent injunction that reads, in relevant part,

> 4. Neither party shall encroach by improvement or the regular parking of watercraft across an imaginary line that represents one-half of the width of the inlet on which their properties are located. However, this shall not be construed to be a grant of permission by either party to allow the other to encroach up to this imaginary line if the same is not permitted by CSCD rules in effect at the time.

Appealed Order at 2; Appellants' App. Vol. 2 at 54. The Board was not a party to the agreement and was subsequently dismissed from the action by stipulation of the parties.

[4] In March 2017, the trial court approved the agreed permanent injunction and issued an order to that effect. In November 2017, the Board amended the CSCD rules to include a new formula for determining the midpoints of all inlets based on property lines, not on shorelines. As a result, Novicki filed an Indiana

Trial Rule 60(B) motion to supplement/modify the permanent injunction to reflect the CSCD's amended rules concerning these boundaries. The Board re-entered the action as an intervenor, pursuant to Indiana Trial Rule 24. In the first phase of bifurcated proceedings, the trial court heard oral argument and limited its determination to resolving the issue of "whether the Court may [as a matter of law] modify or supplement an injunction issued pursuant to the agreement of the parties due to an allegation by one party that the agreed injunction is not [sic] longer equitable." Appealed Order at 3. At the hearing, the Board explained its rule change and argued the importance of applying its amended rule even where the parties have entered the injunction by agreement:

> [T]he agreed injunction is flawed, incomplete and unenforceable. The injunction acknowledges the existence of an imaginary line but does not describe its location at all.… [T]he old method of determining where the center line was, was to measure from the water's edge and find a midpoint and a point equal distance from the shoreline, that was deemed to be the centerline of the cove. However, and this would work great if the shoreline and property line always precisely coincided.… The new method uses the property line as the beginning measuring point.… The use of any other method in our opinion would result in a functional repeal of CSCD's rules and two freeholders can't agree that the rules don't apply to them. And also keep in mind, that d[ue] to changing circumstances CSCD could in the future again change the method of determining the centerline. And any judicial or agreed judgment that purports to establish the centerline must always acknowledge CSCD'S continuing authority to relocate that line. That's our position.

Tr. Vol. 2 at 19, 21-22.

Following the hearing, the trial court issued an interlocutory order concluding that "when a judgment, including an agreed judgment, has prospective application or effect, the Court must have the power to act to avoid an inequitable result that is caused by a change in circumstances that was not reasonably foreseeable at the time the judgment was entered." Appealed Order at 4. Having thus concluded, the court ruled that Novicki was not precluded from pursuing relief pursuant to Trial Rule 60(B).

The Hesses filed a motion to reconsider, which the trial court denied. They sought and were granted certification of the trial court's order for interlocutory appeal, and we accepted jurisdiction. Additional facts will be provided as necessary.

## Discussion and Decision

In framing the nature of the dispute below, we note that Novicki filed a motion for relief from the 2017 agreed injunction that she entered with the Hesses. Trial Rule 60(B)(7) allows relief from judgment where "it is no longer equitable that the judgment should have prospective application[.]" "[T]o establish that it is no longer equitable for a final judgment to have prospective application under Rule 60(B)(7), the movant must show that there has been a change in circumstances since the entry of the original judgment and that the change of circumstances was not reasonably foreseeable at the time of entry of the original judgment." *City of Indianapolis v. Tichy*, 122 N.E.3d 841, 845 (Ind. Ct. App. 2019).

[8] In this interlocutory appeal, the Hesses claim that the trial court erred in declaring that it possesses the legal authority to grant Novicki's motion to supplement/modify the agreed permanent injunction should Novicki meet her burden under Trial Rule 60(B)(7) and in denying their motion to reconsider. Ordinarily, we apply an abuse of discretion standard to appeals involving the trial court's denial of a motion to reconsider or its ruling on a Trial Rule 60(B) motion. *Celadon Trucking Servs., Inc. v. United Equip. Leasing, LLC*, 10 N.E.3d 91, 94 (Ind. Ct. App. 2014) (ruling on motion to reconsider), *trans. denied* (2015); *TacCo Falcon Point, Inc. v. Atlantic Ltd. P'ship XII*, 937 N.E.2d 1212, 1218 (Ind. Ct. App. 2010) (ruling on Rule 60(B) motion). Here, however, our review involves only the preliminary question of whether the trial court has the legal authority to address the merits of Novicki's Rule 60(B)(7) claim; as such, we are faced with a pure question of law, which we review de novo. *Siwinski v. Town of Ogden Dunes*, 949 N.E.2d 825, 828 (Ind. 2011).

[9] The Hesses assert that because the injunction was entered as an agreed judgment, it is a matter of contract, not subject to modification by the trial court. We acknowledge the well-established principle that "[a]fter entering an agreed judgment, the trial court has no authority to modify or change the

judgment in any essential or material manner." *Evans v. Evans*, 946 N.E.2d 1200, 1204 (Ind. Ct. App. 2011).[1]

[10] In contrast, Novicki contends that this action must be resolved by application of injunction law rather than contract law. "An injunction is a judgment of prospective application subject to the issuing court's continuing supervision." *Ballard v. Harman*, 737 N.E.2d 411, 417 (Ind. Ct. App. 2000). A permanent injunction is "limited to prohibiting injurious interference with rights and must be narrowly tailored so that its scope is not more extensive than is reasonably necessary to protect the interests of the party in whose favor it is granted." *Liter's of Indiana, Inc. v. Bennett*, 51 N.E.3d 285, 299 (Ind. Ct. App. 2016), *trans. denied*. "[I]f an injunction is overbroad or if it becomes an instrument of wrong through changed circumstances, it is subject to modification through the court's continuing equity jurisdiction." *Ballard*, 737 N.E.2d at 417.

[11] In support of their argument that the trial court lacks authority to modify or supplement the agreed injunction, the Hesses rely on *Ingoglia v. Fogelson Cos., Inc.*, 530 N.E.2d 1190, 1192 (Ind. Ct. App 1988). In *Ingoglia*, two homeowners experienced flooding during heavy storms and filed separate actions (in Porter and Jasper Counties) against the developer and designer of the storm drainage and water retention systems for money damages due to the flooding and for an

---

[1] To the extent that Novicki points to the Hesses' December 2017 motion to modify the agreed injunction as evidence that the trial court has the authority to modify an agreed order, we note that the previous modification, by nunc pro tunc order, was not material but was entered merely to correct a scrivener's error.

injunction to take corrective measures to prevent future flooding. *Id*. The two homeowners, the developer, and the designer entered an agreed judgment for money damages and the construction of an operational retention pond. The two trial courts approved the settlement agreement and entered judgment accordingly. Thereafter, the money judgment was paid in full, but the cost of the remedial work on the retention pond, a matter not addressed in the agreed judgment, remained in dispute. The homeowners filed separate petitions to enforce judgment, and evidence was reopened. The Jasper County court transferred its case to the Porter County court, which assumed jurisdiction and denied the homeowners' motion to enforce, finding that the developer had met all its responsibilities under the agreed judgment. The homeowners appealed, claiming that the Porter County court lacked the authority to modify the agreed judgment.[2]

[12] The *Ingoglia* court explained that an agreed judgment is, by nature, both a contract between the parties and a judicial act in the form of an entry of judgment. *Id*. at 1199. Citing *United States v. Swift & Co.*, 286 U.S. 106, 114-15 (1932) (court has equitable power to modify agreed injunction even though entered by consent and absent contract term allowing such) and *State v. Martinsville Development Co.*, 174 Ind. App. 157, 163, 366 N.E.2d 681, 685 (1977) (money judgment in condemnation proceeding lacked prospective

---

[2] They also claimed that the Jasper and Porter County courts lacked jurisdiction to confer and assume jurisdiction, respectively, and this Court agreed. *Ingoglia*, 530 N.E.2d at 1197-98.

application), the *Ingoglia* court drew the distinction between an agreed judgment over a matter of prospective application and an agreed judgment concerning a matter that serves merely to rectify past wrongs:

> *Swift* recognized a court of equity's inherent power to modify a judgment (whether by consent or after litigation) when changed circumstances make its prospective application inequitable. The threshold question to be determined in deciding if a consent judgment may be modified because of changed circumstances is whether the judgment has prospective application. Justice Cardozo, writing for the *Swift* Court, stated: "The distinction is between restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change, and those that involve the supervision of changing conduct or conditions and are thus provisional and tentative."
>
> In [*Martinsville Development*], the court stated a judgment has prospective application "when a person's right to do or not to do some act is continuously affected by the operation of the judgment in the future; or, the judgment is specifically directed toward some event which is to take place in the future and does not simply serve to remedy *past* wrongs." (Emphasis in original).

*Id*. at 1199-1200 (citations and footnote omitted).

[13]    In holding that the trial court lacked the authority to modify the agreed judgment, the *Ingoglia* court emphasized that the agreed judgment in that case "served only to remedy past wrongs" and was not prospective in application. *Id*. at 1200. Given these circumstances, the court concluded that "modification was proper only if contract principles [such as the intent of the parties and interpretation of the language] were correctly applied." *Id*.

We believe that the circumstances here are more closely analogous to those in *Swift*.[3] There, the government took action to dissolve a monopoly of meat packers pursuant to 15 U.S.C. § 4 (The Sherman Anti-Trust Act). 286 U.S. at 111. The parties entered an agreed judgment enjoining the meat packers from maintaining a monopoly and from engaging in various acts restraining trade and competition. Two of the meat packers sought to modify the agreed injunction, claiming that the restraints in it had become useless and oppressive due to changes in the industry. *Id*. at 113. Modification was granted below with respect to certain limited aspects of the original agreed injunction, and the action made its way to the United States Supreme Court. The high court analyzed the action by determining first whether the court possessed the power to modify the agreed injunction and then whether the modification was justified under the evidence. *Id*. at 114-15. With respect to the court's power to modify, the *Swift* court issued a strong statement, "We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions, though it was entered by consent.... A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need." *Id*. at 114.

---

[3] We acknowledge the Hesses' claim that *Swift* is inapplicable because it was decided under federal law, which is more amenable to treating agreed judgments as judicial acts subject to the continuing equitable authority of the trial court. That said, like the *Ingoglia* court, we find instructive the U.S. Supreme Court's analysis of agreed injunctions, specifically with respect to its distinction between circumstances involving rights fully accrued and impervious to change and those involving prospective application and changes in conditions.

[15]    Here, our charge is to answer only the first question, that is, whether the trial court possesses the legal authority to modify the agreed injunction. The dispute between Novicki and the Hesses is not limited to remedial matters such as the payment of money damages for a past wrong. The agreed injunction concerns prospective matters such as the positioning of the parties' docks/lifts and the continued navigation of their respective watercrafts within the inlet, all of which must be considered in conjunction with the rules and regulations promulgated by the CSCD, the owners and regulators of the lake. Even when viewed from a purely contractual standpoint, the agreement's terms suggest that the parties may have anticipated potential future judicial intervention. *See* Appellants' App. Vol. 2 at 54 (paragraph 4: "if the same is not permitted by CSCD rules in effect at the time."). Like the *Swift* court, we have no doubt that this injunction, though entered by consent, is subject to the trial court's continuing equitable authority. 286 U.S. at 114.

[16]    This is not to say that Novicki is entitled to such modification.[4] *See id.*, at 114-15 (concluding that court undoubtedly has equitable authority to modify injunction, even though entered by consent, to adapt to changed conditions, yet holding evidence insufficient to justify court's exercise of power to modify). That question will be considered and resolved during the second phase of the proceedings, under a more complete factual record. Should Novicki present

---

[4] Without knowing the full extent of the evidence to be presented during the second phase of the proceedings, we are mindful that the encroachment restrictions imposed by the new CSCD regulations may prove more or less stringent than those in force when the Hesses and Novicki entered their agreed injunction.

sufficient evidence establishing that the agreed injunction has become an instrument of wrong due to changed circumstances and thus is no longer equitable, the trial court, in its discretion, may grant her relief under Trial Rule 60(B)(7). *Ballard*, 737 N.E.2d at 417. If she fails to meet her burden of proving an unforeseeable change in circumstances rendering the injunction inequitable, the trial court will nevertheless retain the authority to interpret and apply the language of the agreed judgment according to contract principles to determine whether an ambiguity exists and to ascertain the intent of the parties. *Ingoglia*, 530 N.E.2d at 1200. Accordingly, we affirm.

[17]    Affirmed.

May, J., and Pyle, J., concur.