TASTEE-FREEZ LEASING CORP. *v.* ANDREW MILWID,
DARWIN VANDERWALL.

[No. 3-675A131. Filed August 2, 1977. Rehearing denied September 19, 1977. Transfer denied February 16, 1978.]

Thomas W. Munger, of Lafayette, Jacobs & Spahr, of Fowler, for appellant.

George Vann, Barce, Barce & Vann, of Kentland, for appellees.

HOFFMAN, J.—Plaintiff-appellant Tastee-Freez Leasing Corporation (Tastee-Freez) filed its complaint against defendants-appellees Andrew Milwid and Darwin Vanderwall (lessees) seeking possession of real estate and damages upon a written lease. Trial to the court resulted in a judgment against Tastee-Freez. The trial court found that Tastee-Freez was not entitled to possession of the leasehold, that lessees were not in default of any of the terms of the lease, that lessees had made overpayments of rent from the inception of the lease, and that therefore lessees were not in default for nonpayment of rent.

The lease provides, in pertinent part, as follows:

"1.  Rent and Method of Payment

(a)  Lessee shall pay to Lessor, as rent for said demised premises, a minimum annual rent of *Seventy-five Hundred and 00/100 - - - - -* Dollars *($7,500),* payable as follows: *Seven Hundred Eighty-One and 25/100 ($781.25)* per month, in advance, during the term of this lease, or an annual rental equal to eight percent (8%) of the annual sales from the leased premises, whichever is greater.

(b)  On or before the 10th day following the end of each month, during the term of this lease, Lessee shall pay to Lessor the amount, if any, by which eight percent (8%) of the prior month's sales exceeds the minimum monthly rental, paid in advance, pursuant to paragraph 1(a) hereof.

(c)  After the expiration of each lease year, Lessor shall return to Lessee, from payments received

pursuant to paragraph 1(b) hereof, the amounts by which the said payments, together with the minimum annual rental paid, pursuant to paragraph 1(a) hereof, exceeds eight percent (8%) of the annual sales. If eight percent (8%) of the annual gross sales is less than the said minimum annual rental, then Lessor shall return to Lessee all of said payments made pursuant to paragraph 1(b) hereof.

\* \* \*

(e) . . . Within ten (10) days after the end of each month of the term of the lease, Lessee shall furnish Lessor with a complete statement, signed by Lessee, certifying the amount of sales during the preceding month. With each such statement, Lessee shall pay to Lessor the payment, if any, due hereunder, pursuant to the provisions of paragraph 1(b)."

An examination of paragraph 1(a) of the lease discloses a conflict between the "minimum annual rent" of $7,500 and the monthly rental of $781.25 when computed on a twelve-month basis. If the minimum annual rental is apportioned equally over a twelve-month period, each monthly installment would be $625. On the other hand, if the stated monthly rental is extended over a twelve-month period, the annual rent would be $9,375. Thus, there is an apparent conflict as to the meaning of the lease agreement with respect to the amount of rent due under its provisions.

In resolving disputes as to the meaning of written contracts, courts must first examine the entire contract itself in order to ascertain the intent of the parties as expressed in the language used in the instrument. *Evansville-Vanderburgh School Corp.* v. *Moll* (1976), 264 Ind. 356, 344 N.E.2d 831; *Fort Wayne Bank Bldg., Inc.* v. *Bank Bldg. & Eq. Corp.* (1974), 160 Ind. App. 26, 309 N.E. 2d 464. In order to glean the meaning of a contract, all its provisions must be considered rather than individual words, phrases or paragraphs. And, the court must accept an interpretation which harmonizes the provisions thereof, if that can

reasonably be done. *Evansville-Vanderburgh School Corp.* v. *Moll, supra.*

> "[W]hen the contract and the terms of the entire instrument taken together show conclusively that the wrong word has been used, through inadvertence, it is the duty of the court to interpret the contract according to the manifest intention of the parties, * * *." *Russell* v. *Merrifield* (1892), 131 Ind. 148, at 150, 30 N.E. 957, at 958.

If an examination of the language of the contract has failed to clarify its meaning, resort must be had to the rules of contract construction and the receipt of extrinsic evidence. *Evansville-Vanderburgh School Corp.* v. *Moll, supra.* The test for determining whether a contract is ambiguous is whether reasonable men would find the contract subject to more than one interpretation. *Bd. of Dir., Ben Davis, etc.* v. *Cloverleaf Farms, Inc.* (1977), 171 Ind. App. 682, 359 N.E.2d 546 (transfer denied); *Myers* v. *Maris* (1975), 164 Ind. App. 34, 326 N.E.2d 577. It is the existence of an ambiguity which requires an examination of evidence of the intent of the parties extrinsic to the contract.

Finally, "where an agreement is so indefinite upon an essential element that it cannot be construed with reasonable certainty, and where it is not clarified by extrinsic circumstances, there is nothing for the court to construe. This simply means that the court cannot re-write and then enforce contracts, which, to the knowledge of the court, the parties themselves did not enter into." *Bd. of Dir., Ben Davis, etc.* v. *Cloverleaf Farms, Inc., supra,* at 549 of 359 N.E.2d.

Tastee-Freez contends that a consideration of the entire lease and the amendments thereto shows that the parties contemplated a monthly rentail of $781.25. Thus Tastee-Freez concludes that there is no ambiguity but only a mistake which should be disregarded by the trial court.

In support of its contention that the lease contemplates a monthly rental of $781.25, Tastee-Freez first points to the pro-

vision for pre-payment of the last month's rent. Such provision reads as follows:

"19.  Lessee has paid $~~1,562.50~~ 781.25 to Lessor at the execution hereof, which amount is payment of the minimum monthly rental payments under the provisions of paragraph 1(a) hereof, for the ~~months of January and February in each of the years 1st~~ & Last Months. ~~inclusive~~ of the term of this lease." (Corrections as appear in original.)

Appellant asserts that this clause specifically identifies the sum of $781.25 as the "minimum monthly rental." Appellant then infers that if the last month's "minimum rental" were $781.25, the minimum rental for the preceding months would likewise be in the same amount.

Tastee-Freez next points to an amendment of the lease which, it contends, shows that the lease intended to provide a "minimum monthly rental." Such provision reads as follows:

"1.  The minimum monthly rental as stated on page 1, paragraph 1, shall not commence until the Tastee Freez Store on the demised premises is opened for business."

Finally, appellant asserts that paragraph 1(b), *supra,* which provides for the determination of any additional rent based on sales, contemplates payment of a "minimum monthly rental."

While these provisions do indicate that the parties contemplated a minimum monthly rental, it does not clearly show that the amount of such rental was intended to be $781.25. In other words, these provisions do not resolve the inconsistency between the "minimum annual rental" of $7,500 and the monthly payments of $781.25. And this is especially true when considered in conjunction with other provisions of the contract. Such other provisions evince an intent that the rental be based on an annual figure. For example, paragraph 1(a) of the lease provides that the rent shall be the greater of (1) the minimum annual rent (payable monthly) ; or (2) 8% of annual sales. Paragraph 1(b) provides for the monthly payment of an amount by which 8% of the prior month's

sales exceeds the monthly rental, and paragraph 1(c) provides for the return of any excess payments made pursuant to paragraph 1(b) so that the result at the end of the year is to effectuate the greater of the minimum annual rent or 8% of annual sales. Thus, the contract when read as a whole indicates that the parties were contemplating an annual rent containing monthly payment provisions with a refund mechanism operable at the end of the year to effectuate the annual rent provisions. Such provisions however do not resolve the inconsistency as to which amount—$7,500 annually or $781.25 monthly—was intended as rent. Since there is an ambiguity, we must turn to an examination of extrinsic evidence and an application of the rules of contract construction in order to glean the intent of the parties.

Appellant contends that since the lessees have paid $781.25 each month, they have by their own acts placed a practical construction upon the lease contract.

However, Tastee-Freez's ledger sheet discloses that upon receipt of the rent payments, $625 was denominated as rent and $156.25 was denominated as an override. Tastee-Freez did not attempt to explain these accounts. Thus, the trier of fact could reasonably infer that appellant was aware of the discrepancy in rental amounts and properly charged $625 to rent and the remainder as an override.

Moreover, it should be noted that Tastee-Freez prepared the instrument and therefore any ambiguities should be construed against it.

Thus the trial court did not err in finding that the $7,500 annual rent was the amount intended under the contract.

Tastee-Freez next contends that the failure of the lessees to furnish the monthly sales report for September, 1970, constitutes an independent basis for recovery.

The lease provided:

"18.  If Lessee shall fail to pay the rent herein reserved promptly on the day the same shall become due and payable

thereunder and shall continue in default for a period of five (5) days, or if Lessee shall fail to promptly keep and perform any of his covenants and undertakings in this Lease, provided strictly in accordance with the terms of this Lease, and shall continue in default for a period of five (5) days after written notice thereof by Lessor of such default and demand of performance, then in such event and as long as any such event shall occur, Lessor may at its sole election (and in addition to any and all other remedies provided by law or contained in this Lease):

   (a) Declare that said term ended and enter into said premises demised either with or without process of law and expel Lessee or any person occupying the same using such force as may be necessary so to do and to repossess the said premises with full rights to such damages as are permissible by law, or:

   (b) Re-let the premises applying said rent from the new tenant on this lease and Lessee shall be responsible for no more than the balance due should a balance exist."

The notice of default stated that "unless this default is cured within the next ten (10) days," Tastee-Freez would proceed in accordance with the aforementioned provision of the lease. Lessees contend, however, that the record contains not evidence that appellees failed to submit such report to Tastee-Freez. In its reply brief, Tastee-Freez contends that the notice of default is evidence that the monthly sales report was not submitted. Regardless of whether such notice is evidence that lessees were in default on the date of the notice, it is not evidence that appellees did not thereafter cure the default. Tastee-Freez had the burden to prove that lessees failed to cure the alleged default. *See, Kimmel* v. *Cockrell* (1974), 161 Ind. App. 659, 317 N.E.2d 449. Thus the trial court did not err in finding that the lessees were not in default under the lease.

The judgment of the trial court is therefore affirmed.

Affirmed.

Garrard, J., concurs; Lowdermilk, J., participating by designation, concurs.

NOTE.—Reported at 365 N.E.2d 1388.