Richard J. OSER, Appellant (Defendant and Third–Party Plaintiff Below),

v.

COMMERCIAL UNION INSURANCE COMPANIES and the Employer's Fire Insurance Company, Appellees (Third–Party Defendants Below).

No. 3–180A18.

Court of Appeals of Indiana, Third District.

Sept. 22, 1980.

Rehearing Denied Oct. 23, 1980.

Carol A. Angel, Fort Wayne, for appellant.

Douglas E. Miller and James P. Fenton, Barrett, Barrett & McNagny, Fort Wayne, for appellees.

STATON, Judge.

Richard J. Oser's 17 year old son, Dale E. Oser, was driving his 1968 Pontiac when it became involved in a personal injury and property damage accident.[1] At the time of the accident the son was not a resident of his father's household. The father, Richard J. Oser, brought an action against his insurance company, The Commercial Union Assurance Companies and its subsidiary, The Employer's Fire Insurance Company, alleging that his insurance policy provided coverage for his son's accident.

The insurance company filed its motion for summary judgment which was granted by the trial court. Richard J. Oser brings this appeal and presents this issue for our review:

> When a father signs his son's driver application and agrees to be liable for any damages caused from his son's driving, does the father have a valid claim under his insurance policy which does not name the son as an insured or list the son's vehicle as an insured vehicle?

We affirm.

When Dale made an application to the Bureau of Motor Vehicles for a Probationary Operator's License, his father, Oser, signed a financial liability statement which was attached to the application. Pursuant to IC 1971, 9–1–4–32,[2] his father agreed "to be responsible, jointly and severally" with Dale for any injury or damage caused by him in the operation of a motor vehicle. At the time of the accident, Dale was living with his mother in Indiana. His father had moved to Kentucky and had never, at any time, sent a written revocation of this agreement to the Bureau of Motor Vehicles. See IC 1971, 9–1–4–32(e).

On the date of the accident, Richard Oser, Dale's father, was the "named insured" in an automobile liability policy issued by Commercial. In urging that his son was covered by this policy, he makes no attempt to argue that his son was a "named in-

---

1. Dale's automobile collided with an automobile owned by North American Van Lines, Inc., and operated by Robert Peterson. Each filed a negligence action against Richard Oser and Dale Oser which, upon a motion, was severed from the action to determine insurance coverage. Both parties sought to hold Richard Oser responsible by virtue of his signature on Dale's application for a driver's license.

2. IC 1971, 9–1–4–32(c) and (d) provide:
   "(c) The application, of any person, under the age of eighteen (18) years, for any permit . or license to be issued under the provisions of this chapter, shall be signed and sworn to or affirmed before a person authorized to administer oaths, by either parent having custody of the applicant, . . .
   "(d) Any person so signing an application as above provided thereby agrees to be responsible, jointly and severally with the applicant, for any injury or damage which the applicant may cause by reason of the operation of a motor vehicle, in all cases where the applicant is liable in damages."

sured" or even a "relative." He recognizes that, according to the policy definitions, his son, Dale, was not a "relative" because he was not a resident of the household of the named insured at the time of the accident. In addition, Richard Oser acknowledges that the 1968 Pontiac was not listed in his policy as an "owned automobile." If it were covered, he agrees that it would be only as a "non–owned automobile."

Richard Oser argues, instead, that Commercial's duty to him arises by virtue of the following provisions:

## "PART 1–LIABILITY

"Coverage A–Bodily Injury Liability; Coverage B–Property Damage Liability; To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

"A. bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by any person;

"B. injury to or destruction of property, including loss of use thereof, hereinafter called 'property damage';

arising out of the ownership, maintenance or use of the owned automobile or any non–owned automobile, and the company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, . . ."

We agree with him that his signature, pursuant to IC 1971, 9–1–4–32 operates to impose upon him an obligation to be "jointly and severally" responsible with Dale for any injury or damage caused by him. *See Wenisch v. Hoffmeister* (1976), 168 Ind.App. 247, 342 N.E.2d 665. In view of our reading of the contract as a whole, however, we are reluctant to broaden the coverage of the policy to the extent suggested by Richard Oser.

It is our duty to interpret a contract so as to ascertain the intent of the parties. In doing so, we must accept a construction of the contract which harmonizes its provisions as opposed to a construction which causes the provisions to be conflicting. *Evansville–Vanderburgh School Corp. v. Moll* (1976), 264 Ind. 356, 344 N.E.2d 831. The meaning of a contract is to be determined from an examination of all of its provisions, not from a consideration of individual words, phrases or even paragraphs read alone. *Evansville–Vanderburgh School Corp., supra; Tastee–Freez Leasing Corp. v. Milwid* (1977), Ind.App., 365 N.E.2d 1388.

The "persons insured" under this policy are as follows:

"Persons Insured. The following are insureds under Part I:

(a) with respect to the owned automobile,
(1) the named insured and any resident of the same household,
(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, and
(3) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a)(1) or (2) above;

(b) with respect to a non–owned automobile,
(1) the named insured,
(2) any relative, but only with respect to a private passenger automobile or trailer,
*provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission, and*
(3) any other person or organization not owning or hiring the automobile, but only with respect to his or its liability because of acts or omissions of an insured under (b)(1) or (2) above."
(Emphasis added.).

A "non–owned automobile", according to this policy, is:

"'non–owned automobile' means an automobile or trailer not owned by or furnished for the regular use of either the

named insured or any relative, other than a temporary substitute automobile."

The query here is whether actual use by the insured of the non–owned automobile is determinative of the question of coverage. *See Wisdom v. Eagle Star Insurance Co.* (1963), 211 Cal.App.2d 602, 27 Cal.Rptr. 599. We conclude that it is.

Of particular importance in our inquiry is Section (b), persons insured "with respect to a non–owned automobile." This section provides that "persons insured" can be "the named insured" or "any relative," provided his actual use or actual operation of the vehicle is with the permission of the owner. We are persuaded that the paragraph which limits the use of the vehicle to actual use or operation pertains to both Subsections (1) the named insured and, (2) any relative. If this limitation had been intended to be applicable to only Subsection (2), then it could have easily been worded so as to contain this restriction solely within the subsection, as in Subsection (a)(2). This was not the case.

A fair reading of this section, in context with the rest of the policy, leads us to the conclusion that Richard Oser could have been an "insured" with respect to a "non–owned automobile" only if he had been actually operating or using the vehicle. Even in this situation, his use or operation of the non–owned automobile would have had to have been with the permission of the vehicle's owner.

The court properly entered a summary judgment in favor of Commercial.

Judgment affirmed.

GARRARD, P. J., concurs.

HOFFMAN, J., concurs in result with opinion.

HOFFMAN, Judge, concurring.

I concur in the result.

I construe the clause in question "provided his actual operation of (if he is not operating) the other actual use thereof . . . ." to mean the insured's actual operation or operation by others where vicarious liability attaches.

This would not include the situation present in the instant case.