The GARY MUNICIPAL AIRPORT AUTHORITY DISTRICT, Appellant (Defendant Below),

v.

Ted PETERS, Jack Slaboski, Tony Zaleski and The Hoosier State Bank & Trust Company, as Trustee of Trust No. A–878, Appellees (Plaintiffs Below).

No. 45A03–8810–CV–303.

Court of Appeals of Indiana, Third District.

March 5, 1990.

Gilbert King, Jr., Gary, Karen Pulliam–Willis, Gary, for appellant.

Joseph E. Costanza, Burke, Murphy, Costanza, Costanza & Cuppy, East Chicago, Terrance L. Smith, Smith & DeBonis, East Chicago, for appellees.

STATON, Judge.

The Gary Municipal Airport Authority District (hereinafter referred to as GMAAD) appeals from summary judgment entered in the Lake Superior Court in favor of the trustee and beneficiaries of the Hoosier State Bank Trust No. A–878 (hereinafter referred to as Trust). The trial court awarded the Trust $75,000.00 in liquidated damages and $82,562.50 in attorney fees. GMAAD raises the following issues on appeal:

1.  Whether the trial court erred in denying GMAAD's motion to withdraw admissions made by operation of law?

2.  Whether the trial court erred as a matter of law in calculating the amount of attorney fees to be awarded?

We remand.

The record of this case shows a protracted history of litigation between GMAAD and the Trust stemming from GMAAD's attempts to acquire property belonging to the Trust in furtherance of its airport expansion plan. Prior to the lawsuit here at issue, the Trust had twice sued GMAAD on grounds relating to GMAAD's attempts to purchase its land, which lawsuits included one federal cause of action. The lawsuits were resolved *in toto* by the execution of a

settlement agreement between the two parties which, *inter alia*, provided for the dismissal of both causes of action with prejudice. GMAAD's alleged violation of the settlement agreement is the subject matter of the judgment entered in this case.

The Trust filed its action for breach of settlement agreement on September 16, 1986, by which it sought the remedies of specific performance, liquidated damages, litigation costs and attorney fees. On November 5 of the same year, the Trust filed a set of requests for admissions which by law required a response from GMAAD within thirty days. During the thirty day period, GMAAD requested and was granted an additional fifteen days to file its response, up to and including December 20, 1986. However, GMAAD failed to meet the extended deadline.

On May 5, 1987, the Trust filed a motion for partial summary judgment, which motion included a prayer that all requests for admission be deemed admitted due to GMAAD's failure to have yet responded to the same. GMAAD thereafter submitted its motion to file response out of time to plaintiff's request for admissions instanter, responses to requests for admission, and motion, memorandum, and affidavit in opposition to summary judgment.

On August 18, 1987, the trial court denied GMAAD's motion to withdraw and amend the admissions made by the default and thereupon entered partial summary judgment in favor of the Trust. The Trust was awarded $75,000.00 in liquidated damages in accordance with the terms of the settlement agreement and, after a hearing, attorney fees dating back to the inception of litigation between the parties in 1979.

### Withdrawal of Admissions

GMAAD first contends that the trial court employed an erroneous standard in determining whether GMAAD should have been allowed to withdraw the admissions entered by operation of law. Because we agree with GMAAD in this contention, we remand to the trial court for proceedings consistent with the ensuing discussion.

■ Any party may serve an opposing party with written requests for admission of the truth of any matters encompassed by Indiana Rules of Procedure, Trial Rule 26(B). Indiana Rules of Procedure, Trial Rule 36(A). By operation of law, a party who fails to respond to requests for admissions within thirty days of service is deemed to have admitted all matters contained therein. *Id.; Pathman Construction Co., etc. v. Drum–Co Engineering Corp.* (1980), Ind.App., 402 N.E.2d 1, 5. The purposes of T.R. 36, which is based upon and runs in close correlation with the federal rule regarding admissions, are to expedite trial by determining which issues are in genuine dispute and to avoid unnecessary expense by resolving uncontested issues. *Berry v. Federated Mutual Insurance Co.* (N.D.Ind.1986), 110 F.R.D. 441; *Herrin v. Blackman* (W.D.Tenn.1981), 89 F.R.D. 622. The ultimate goal, however, is to reach a just resolution on the merits of an action. *See Marshall v. District of Columbia* (1978), D.C.App., 391 A.2d 1374. To this end, T.R. 36(B) provides a method by which a party who had admitted matters through mistake, inadvertence or negligence may withdraw or amend admissions. It is within the discretion of the trial court to permit a party to withdraw an admission if it ascertains that: 1) the presentation of the merits of the action would be subserved by allowing withdrawal of the admissions; and 2) the party who obtained the admissions failed to demonstrate that withdrawal or amendment will prejudice him in maintaining his action on the merits. T.R. 36(B); *Liberty Mutual Insurance Company v. Matuga* (1984), Ind.App., 471 N.E.2d 737, 738. When this test is properly applied, we may review the determination of the trial court only for abuse of discretion. *Stewart v. Stewart* (1987), Ind.App., 506 N.E.2d 1132, 1134.

■ The first part of the above referenced test requires the admitting party to notify the court of its intention to challenge or object to the admissions. Many challenges to a trial court's failure to permit withdrawal or amendment have failed on appeal because of the admitting party's

failure to move on the issue at the trial level. *See e.g. United States v. Kasuboski* (7th Cir.1987), 834 F.2d 1345, 9 Fed.R. Serv.3d 870. However, "T.R. 36(B) does not require a motion for relief under it to be denominated in any particular manner. Merely by challenging deemed admissions and asking for an extension of time to respond, a party satisfies the requirement of T.R. 36(B) that a party move to withdraw or amend deemed admissions." *Hanchar Industrial Waste Management, Inc. v. Wayne Reclamation & Recycling, Inc.* (1981), Ind.App., 418 N.E.2d 268, 271 (Staton, J., concurring in part, dissenting in part).

It is also the burden of the moving party to demonstrate that presentation of the merits would be "subserved" by permitting withdrawal or amendment of the admissions. *Id.* By requiring this showing, T.R. 36(B) ensures that the end result of permitting withdrawal or amendment is not merely an unnecessary protraction of proceedings bound for an inevitable result. It focuses, however, on the policy of furthering a just and complete resolution of the merits. *Marshall, supra.*

The question of precisely what constitutes "subserving presentation of the merits" in a practical sense has received little attention by our courts. "Subserve" is defined as "to promote the welfare or purposes of" or "to serve as a ... means in carrying out". *Webster's Ninth New Collegiate Dictionary,* 1176 (1985). Placing the definition in the context of the T.R. 36(B) test, the burden is on the moving party to show how withdrawal or amendment of the admissions would assist in reaching a just resolution of the action on its merits. With regard to this, the federal courts have held that this burden is clearly met when the effect of denying a motion to withdraw and amend would "practically eliminate any presentation of the merits." *Westmoreland v. Triumph Motorcycle Corp.* (D.Conn.1976), 71 F.R.D. 192, 193. In *Pleasant Hill Bank v. United States* (W.D.Mo.1973), 60 F.R.D. 1, it was held that the end result of denying a motion to withdraw where key controverted issues are inadvertently or negligently admitted is

an unjustified suppression of the merits, and therefore that presentation of the merits is subserved by permitting withdrawal in such cases. As stated in *Hadra v. Herman Blum Consulting Engineers* (N.D. Tex.1977), 74 F.R.D. 113, "it does not further the interests of justice to automatically determine all the issues in a lawsuit and enter summary judgment against a party because a deadline was missed." *Id.* at 114. In fact, the federal courts have taken the position that where the party which acquired the admissions cannot demonstrate prejudice, the trial court *should* extend permission to withdraw and amend. *Marshall v. District of Columbia, supra; See also Asea, Inc. v. Southern Pacific Transportation Co.* (9th Cir.1981), 669 F.2d 1242, 1248 ("In a proper case ... such as when an admission has been made inadvertently, Rule 36(b) might well require the district court to permit withdrawal.").

The second part of the T.R. 36(B) test requires the party who receives the admissions to demonstrate that he would be prejudiced in maintaining his action on the merits were the court to allow withdrawal. However, the prejudice contemplated by this rule is not merely that the party will then be required at trial to prove the truth of the matters formerly admitted. *Bergemann v. U.S.* (10th Cir.1987), 820 F.2d 1117, 8 Fed.R.Serv.3d 184. Rather, one who received the benefit of the admissions must prove that he relied on the admissions to his detriment. *Brook Village North Associates v. General Electric Co.* (1st Cir. 1982), 686 F.2d 66, 64 A.L.R.Fed. 730. For example, a party may meet this burden by showing that because of his reliance on the admissions, he is unable to produce key witnesses or present important evidence. *Id.*

It also must be shown that reliance on the admissions was reasonable. One consideration in determining whether the reliance was reasonable is the nature of the admissions made. In many cases, admissions are made which are so central to a case as to render reliance on them unreasonable. *See Westmoreland, supra.* The same is true when admissions are made

which are known to both parties as intended for litigation. *Id.* Another consideration is the amount of time which has elapsed since the admissions were entered. Diligence in litigation is intended by all trial rules. As stated in *Hadra v. Herman Blum, supra,* "too liberal sufferance by the court of a litigant's sloth" would undermine the T.R. 36 goal of expediting trial. There must be a point after which the party who gained the admissions has the right to rely on them. However, what amount of time is "reasonable" varies on a case-by-case basis. In *Westmoreland, supra,* a defendant was allowed to withdraw admissions made by default one year after their entry where upholding the admissions would "practically eliminate" any presentation on the merits. The court stated that the admissions were so "vital" to the defendant's case that the plaintiff could not have reasonably believed that the admissions were intended. The court also noted that a different result may have been reached had the plaintiff been capable of demonstrating hardship caused by withdrawal.

T.R. 36 is designed to expedite trial by weeding out uncontested issues, thereby baring the heart of the controversy for more efficient litigation. Conversely, it is not the intention of the rule to force speedy but untimely ends to justiciable controversies by laying procedural landmines for unsuspecting litigants. Ultimately, we conclude that justice requires a trial court to allow withdrawal and amendment of admissions where the admissions involve core controverted issues and the opposing party fails to establish that he would be prejudiced thereby in maintaining his action on the merits. The T.R. 36(B) standard, then, may be considered to require the trial court to balance an unjust result to the party who made the admissions with fairness to the party who gained the admissions.

With the foregoing discussion in mind, we turn to the case before us. The transcript of this case discloses that GMAAD sought withdrawal or amendment of admissions by its "motion to file response to plaintiffs' request for admission instanter".[1] The motion cited the voluminous number of requests for admission and an inordinately hectic work schedule maintained by defense counsel as excuses for failure to timely respond to the requests for admission. GMAAD also filed its amended admissions demonstrating the differential between what was admitted and what GMAAD had intended to deny with regard to key issues. The Trust neither filed a response to this motion nor raised argument during the summary judgment hearing tending to show that it would be prejudiced by withdrawal in pursuing its action on the merits. The trial court, in denying the motion to withdraw, harkened back to the grounds on which it originally granted GMAAD a 15–day extension period in which to answer the requests for admission, stating:

... Defendants infer that a lack of soil sampling was necessary for the consumation [sic] of the parties agreement.

The court further finds that defendants, although granted the right to enter upon plaintiff's land to take the soil samples, have not demonstrated that soil samples were in fact taken pursuant to authority granted by the Court.

THEREFORE, the Court cannot conclude that the request for soil sampling was needed to answer admissions especially in light of the fact that the defendants at no time sought a further extension of time to answer.

FURTHER, plaintiffs' and defendants' history of litigation would indicate matters of this cause were familiar to all parties.

For these reasons and for the reason that the expeditions [sic] conclusion of civil claims are intended by the trial rules, the court now, pursuant to Trial Rule 36, deems all plaintiffs' request for admissions Admitted.

(Record at 357.)

■ GMAAD's "motion to file response" was based on the inapposite excusable ne-

---

1. The Trust takes minor issue with GMAAD's appellate characterization of this filing as a motion to withdraw or amend admissions. However, the motion was a clear challenge to the admissions made by default. The trial court was correct in considering the motion as a request for withdrawal or amendment of admissions.

glect standard of Indiana Rules of Procedure, Trial Rule 6(B)(2). Similarly, the trial court's ruling on this subject matter focused on whether GMAAD presented a valid excuse for failing to timely respond. In basing its denial of GMAAD's motion on this consideration, the trial court utilized an erroneous standard. *Hanchar Industrial Waste Management, supra.*

A similar situation was presented in *Gutting v. Falstaff Brewing Corp.* (8th Cir. 1983), 710 F.2d 1309. There, it was determined that the trial court erred in denying the plaintiff's motion for leave to file answers out of time to the defendant's request for admission filed pursuant to Fed. R.Civ.P 36(a). It was noted that since the motion for late response was the equivalent of a motion to withdraw and amend, the proper method for reviewing the motion was under the Fed.R.Civ.P. 36(b) test. On appeal, the trial court's decision to deny the plaintiff's motion was reversed because this test was not applied when evaluating the motion and the defendant failed to show that he would have been prejudiced by allowing late answers to be filed.

Were we to consider federal law alone, we would feel compelled to reverse the trial court's ruling in the case before us and order that GMAAD be allowed to withdraw or amend admissions. As will later be shown, GMAAD's tendered responses to requests for admission amply demonstrate that principal issues determinative of this case were unintentionally admitted. The trial court could not have been unaware of this fact, as it denied the motion to amend admissions and entered summary judgment against GMAAD in the same breath. However, Indiana caselaw persuades us that remand for reconsideration is required.

In *Hanchar Industrial Waste Management, supra,* we reviewed a decision of the trial court permitting Wayne Reclamation to file answers to Hanchar's requests for admissions after the 30–day time limitation had expired. Wayne Reclamation's "petition for extension of time to respond to requests for admissions", addressed as a motion to withdraw or amend, was based and seemingly granted upon grounds of inadvertence and excusable neglect under Indiana Rules of Procedure, T.R. 6(B)(2). Writing for the majority, Hoffman, J., stated:

> The [T.R. 36(B)] standard makes no reference to Trial Rule 6(B) nor to excusable neglect. Excusable neglect therefore has no bearing on whether Wayne Reclamation should be permitted to withdraw or amend the admissions it made by operation of law.
>
> Wayne Reclamation's petition for extension of time was based solely on the excusable neglect standard of Trial Rule 6(B)(2). In granting the extension on this ground the trial court employed an erroneous standard. This matter must therefore be remanded for a determination of whether the presentation of the merits will be subserved by withdrawal or amendment of the admissions. A determination must also be made whether such withdrawal or amendment will prejudice Hanchar in maintaining its action on the merits.

*Id.* at 270. (Citations omitted.) The author of this opinion concurred in part and dissented in part to the majority position in *Hanchar.* Given the scope of appellate review requiring us to affirm a trial court's action on any theory which has a factual basis in the record, this author concluded that the record provided sufficient evidence from which we could *infer* that the T.R. 36(B) standard had been utilized by the trial court in reaching its decision to permit withdrawal and amendment. This is the crucial distinction between *Hanchar* and the case before us: in *Hanchar,* the trial judge failed to provide us with the considerations his decision was based upon. Here, we have stated reasoning based upon an erroneous standard.

■ Nonetheless, the fact remains that the *Hanchar* majority refused to enter an unqualified reversal of the trial court's decision to permit amendment of admissions regardless of the fact that the admitting party failed to even attempt to show that the merits of the action would be subserved thereby. The only conclusion we can logically reach is that remand is required

where a trial court has employed an erroneous standard in granting or denying a motion to withdraw or amend admissions. Since such is the posture of the case before us, we remand this matter for a determination of whether GMAAD should be allowed to withdraw or amend the admissions it made by default in light of the considerations set forth in T.R. 36(B). However, this does not conclude our discussion.

■ In his dissenting opinion, Judge Baker posits that even if GMAAD had been allowed to withdraw and amend the admissions made by operation of law commensurate with their tendered responses, summary judgment was nonetheless correctly rendered because the amended responses effectively admitted to all material facts proving breach of settlement agreement. We respectfully disagree.

As Judge Baker notes, GMAAD was required under the settlement agreement entered on March 1, 1985 to have federal funds available and "take all such action so as to remain eligible and qualified for such Federal funding." (Record at 16.) On May 29, 1986, GMAAD was advised that it had received a federal grant for the purpose of acquiring the Trust's property subject to the condition that GMAAD fund the difference between the appraised value and the amount deducted by the FAA therefrom. (Record at 75, 121.) GMAAD's tendered responses, affidavit and exhibits show that the Indiana State Board of Accounts conducted an audit of GMAAD's internal controls for the years 1982, 1983, and 1984 which concluded that GMAAD had not maintained adequate records from which they could form an opinion on GMAAD's combined financial statement for those years. (Record at 254.) This report, dated February 10, 1986, was forwarded to the Chicago Airport District Authority which in turn notified GMAAD in a letter dated June 13, 1986 as follows:

> Because of the significant internal control weaknesses cited in the report and the absence of a financial and compliance audit opinion, we unfortunately will not be able to make any payments honoring any payment requests for any grants

> *until the internal accounting control deficiencies identified in the audit report are corrected* to the satisfaction of the Indiana State Board of Accounts and the Office of the Inspector General.

Record at 21. (Our emphasis.) In its tendered responses to requests for admissions, GMAAD denied that it had not remained eligible and qualified for federal funding or that it was unable to comply with the settlement agreement. It was averred that GMAAD had done nothing since the execution of the agreement to jeopardize its federal funding eligibility. (Record at 342, 343.) In his affidavit, the Executive Director of the Gary Municipal Airport stated that Gary Municipal Airport was in the process of "putting in place internal auditing procedures in compliance with the aforementioned audit report." (Record at 349.) It was also pointed out that the grant funding for land acquisition had not been revoked by the Federal Aviation Administration. *Id.*

This series of events raises at least two material issues of fact: whether the temporary suspension of grant payments constituted a breach of that portion of the settlement agreement which required that GMAAD have federal funds available and do nothing to violate its eligibility to receive such funds; and whether it was intended that actions predating the settlement agreement which resulted in the suspension of grant payments but were unknown to both parties until one year after the agreement was entered be considered a breach of that portion of the agreement providing that GMAAD "take all such action as to remain eligible and qualified for such Federal funding." Because of these significant concerns we conclude that, had the trial court granted GMAAD's motion to withdraw or amend admissions, summary judgment would be inappropriate.

### Attorney Fees

■ GMAAD also raises the issue of whether the trial court erred as a matter of law in awarding attorney fees for work predating execution of the settlement agreement. We address this question re-

gardless of our disposition on the preceding issue because it is relatively unaffected thereby and will likely reoccur.

The settlement agreement provided that the parties pay their respective costs and expenses incurred with regard to the subject litigation. However, it also contained a provision which stated *inter alia:*

> In addition, should it be determined that any party to this Agreement has breached its terms and conditions, the party seeking relief shall be entitled to recover all costs and attorney fees.

(Record at 68.)

The uncontroverted testimony presented at the attorney fees hearing established that when the settlement agreement was entered, the parties thereto intended that if either party breached the agreement, the non-breaching party would be entitled to recover attorney fees relating back to the commencement of litigation in 1979. The trial court awarded attorney fees totalling $82,562.50, $54,375.00 of which predated the settlement agreement, in accordance with this evidence.

GMAAD contends that, because the judgment of dismissal entered in federal court required that each party bear its own costs, the judgment precluded further litigation in state court on the issue of attorney fees predating the settlement agreement. In support of its argument GMAAD cites *Hanover Logansport, Inc. v. Robert C. Anderson, Inc.* (1987), Ind.App., 512 N.E.2d 465, in which we determined that an issue may be reserved and litigated outside of a consent judgment only where it is clear that both parties have agreed to reserve the issue and it is precisely stated what issues or claims are being reserved. We disagree with GMAAD's contention that the award of attorney fees in this case was in the nature of issue relitigation. Further we would point out that, in entering its judgment of dismissal, the federal court was "merely perform[ing] the ministerial duty of recording the agreement of the parties." *General Discount Corporation v. Weiss Machinery Corporation* (1982), Ind.App., 437 N.E.2d 145, 151.

While a consent judgment enjoys all of the force and effect of a judgment of the court, it is characterized in the Indiana courts as a contract to which the rules of contract construction apply. *Ingoglia v. Fogelson Companies, Inc.* (1988), Ind.App., 530 N.E.2d 1190, 1199, *reh. denied; Ash v. Chandler* (1988), Ind.App., 530 N.E.2d 303, 306. When asked to construe a consent judgment, the trial court must determine and effectuate the intent of the parties thereto. *Ingoglia, supra* at 1200. Where the intent of the parties to a consent judgment is discernible from the written instrument, the courts must enforce the terms of the contract as so given. *Id.* However, it is basic to contract law that where the agreement is ambiguous, evidence may be submitted from which to determine the intent of the parties at the time the contract was entered. *See Tastee–Freez Leasing Corp. v. Milwid* (1977), 173 Ind.App. 675, 365 N.E.2d 1388, 1390, *trans. denied.*

Here, the trial court interpreted what is identified as the "Remedies" clause of the settlement agreement. The "Remedies" clause is ambiguous to the extent that the language awarding "all costs and attorney fees" could cause reasonable minds to question whether it was intended to include past and prospective attorney fees or merely those incurred as a result of a breach. As the only evidence presented at the attorney fees hearing supports the trial court's determination that the parties intended the "all costs and attorney fees" clause to include attorney fees dating back to the inception of litigation between the parties, we conclude that GMAAD's argument does not raise error.[2]

Affirmed in part and remanded to the trial court for proceedings consistent with this opinion.

---

2. GMAAD does not argue the unreasonableness of the $125.00 per hour rate upon which the attorney fees award was based. However, we note that the reasonableness of this rate was among those matters GMAAD admitted by oper-
ation of law and thus may be the subject of further litigation contingent upon the trial court's ruling on remand. Our holding on the attorney fees issue is tempered in this regard.

HOFFMAN, P.J., concurs in result with separate opinion.

BAKER, J., dissents with separate opinion.

HOFFMAN, Judge, concurring in result.

I agree that this matter should be remanded for a determination whether the presentation of the merits will be subserved by withdrawal of the admissions. However, I offer a different analysis in reaching that result.

GMAAD did not demonstrate in its motion to withdraw and/or amend the admissions that withdrawal would subserve the presentation of the merits of the action. Such a showing was required of GMAAD by Ind. Trial Rule 36(B). If the trial court had ruled against GMAAD because it failed to make the requisite showing under T.R. 36(B), this Court would have reviewed the determination of the lower court only for abuse of discretion. *See Stewart v. Stewart* (1987), Ind.App., 506 N.E.2d 1132, 1134.

The difficulty in appellate review arises because the trial court couched its ruling in the following terms:

"... Defendants infer that a lack of soil sampling was necessary for the consumation [sic] of the parties [sic] agreement.

The court further finds that defendants, although granted the right to enter upon plaintiff's [sic] land to take the soil samples, have not demonstrated that soil samples were in fact taken pursuant to authority granted by the Court.

THEREFORE, the Court cannot conclude that the request for soil sampling was needed to answer admissions especially in light of the fact that the defendants at no time sought a further extension of time to answer.

FURTHER, plaintiffs' and defendants' history of litigation would indicate matters of this cause were familiar to all parties.

For these reasons and for the reason that the expeditions [sic] conclusion of civil claims are [sic] intended by the trial rules, the court now, pursuant to Trial Rule 36, deems all plaintiffs' request for admissions Admitted."

The lower court, fully cognizant of the course of the proceedings before it, noted that GMAAD's failure to respond to the request for admissions was originally connected with the asserted need to take a soil sampling. Yet no sample was taken during the extended period of time allowed by the court for answering the request for admissions. The trial court reasonably concluded that the soil sampling was merely a pretext used by GMAAD to delay responding to the discovery request. Such conduct on the part of GMAAD was properly considered by the court in determining whether the admissions by default should be withdrawn. After all, T.R. 36 is intended, at least in part, to operate as a sanction against a party that fails to respond to a request for admissions. *Accord Clark County State Bank v. Bennett* (1975), 166 Ind.App. 471, 336 N.E.2d 663 (sanctions for failure to respond to request for admissions found in T.R. 36; resort to T.R. 37 unnecessary).

Because T.R. 36 defines both the discovery procedure for obtaining admissions and the sanction for failure to respond to the discovery request, the rule must be given teeth. T.R. 36(B) places the burden squarely upon the moving party to show how the withdrawal or amendment of the admissions would assist in reaching a just resolution of the action on its merits. In ruling on a motion to withdraw and/or amend admissions, the court should consider whether key controverted issues have been admitted by operation of law. Equally important is a consideration whether the moving party has abused the discovery process by its failure to respond to a request for admissions. Abuse may be manifested in the party's inordinate delay in responding without seeking extensions from the trial court, or in the party's apparent bad faith in refusing to respond.

The lower court in the instant case alluded to both indicia of abuse in its ruling on GMAAD's motion to withdraw and/or amend the admissions. Yet the court did not state with clarity whether or not the

presentation of the merits would be subserved by withdrawing the admissions. This ambiguity in the court's ruling has led Judge Staton to conclude that the court employed an erroneous standard in denying GMAAD's motion. While I am not convinced that the trial court applied an improper test, I agree that the court should be given an opportunity to clarify its ruling. For that reason, I concur that the cause should be remanded.

BAKER, Judge, dissenting.

I respectfully dissent and would affirm the decision of the trial court to grant summary judgment.

In *Stewart v. Stewart* (1987), Ind.App., 506 N.E.2d 1132, this court stated that:

[W]e will reverse the trial court's denial of the motion to withdraw an admission only if the trial court abused its discretion in deciding either of the following two questions: (1) whether the presentation of the merits would be subserved by withdrawal of the admission, or (2) whether the party who obtained the admission will be prejudiced in maintaining his action or defense on the merits. Because T.R. 36(B) links the two part test with the conjunctive "and," the rule requires that both parts of the test be satisfied before withdrawal is proper.

506 N.E.2d at 1134.

In its motion to withdraw and/or amend the admissions which had been deemed admitted by operation of law, GMAAD alleged:

1. That the plaintiffs Request for Admissions were [sic] extremely voluminous numbering 83, in addition to having over 125 pages of exhibits.

2. That the scheduling of defense counsel's cases and other duties and responsibilities of his office have required an inordinate amount of counsel's time and energies for the last six months.

3. That the delay in responding to plaintiffs Request for Admissions will not prejudice the plaintiff in that there has been no change in the evidence since the due date of response to plaintiffs Request for Admissions.

4. That the denial of this motion will cause an undue prejudice to the defendants in that the case will not be decided on its merits.

None of those allegations demonstrated that the presentation of the merits of the action would be subserved by withdrawal of the admissions. Such a showing was required of GMAAD by Ind. Trial Rule 36(B).

In the first two paragraphs of its motion to withdraw and/or amend the admissions, GMAAD asserted that its failure to respond to the plaintiffs' request for admissions was excusable. Excusable neglect is not a basis for permitting a party to withdraw or amend the admissions it made by operation of law. *Pathman Constr. Co. v. Drum–Co. Eng'g* (1980), Ind.App., 402 N.E.2d 1, 7. The proper consideration is whether the presentation of the merits will be furthered if the movant is permitted to withdraw or amend the admissions. *Id.*

GMAAD also complained that the case would not be decided on its merits unless GMAAD were permitted to withdraw the admissions. A similar contention was rejected by this court in *Stewart, supra.*

In *Stewart,* a negligence action, the plaintiff admitted that he was a licensee on the property of the defendant at the time he sustained injuries. Based upon that admission, the defendant filed a motion for summary judgment. The plaintiff then moved to withdraw the admission. The plaintiff stressed that if he was not permitted to withdraw the admission, he would be deprived of the opportunity to present his case on the merits. This court responded:

Perhaps [the plaintiff] fails to recognize that a summary decision that his case has no merit *is* a decision on the merits. Too, he fails to persuade us that withdrawal of his admission will subserve the presentation of the merits. Therefore, the first element of the test set forth in T.R. 36(B) has not been satisfied, and the trial court did not abuse its discretion in denying [the plaintiff's] motion to with-

draw the admission that he was a licensee.

*Id.* at 1134 (Emphasis in original).

GMAAD's protest that the case would not be decided on the merits did not place before the trial court the question whether the merits of the action would be subserved if the admissions were withdrawn or amended. Furthermore, GMAAD has failed to provide the trial court with any suggestion that it had a meritorious defense. The mere suggestion to the trial court that a denial of its motion would cause undue prejudice to GMAAD in that the case would not be decided on its merits is insufficient. *Id.* Because GMAAD failed to make the requisite showing of T.R. 36(B), the lower court properly denied the motion to withdraw and/or amend the admissions.

Moreover, an examination of the attempted response to the request for admissions tendered by GMAAD discloses that the trial court's entry of summary judgment was in fact appropriate.

One of the requirements under the settlement agreement was that GMAAD have federal funds available and that it do nothing to violate its eligibility to receive such funds. However, GMAAD admitted in its response that it did not remain eligible and qualify for federal funding due to its failure to maintain adequate accounting records and to correct such deficiencies. There is nothing in the settlement agreement to indicate the parties intended to recognize a temporary suspension of benefits as an exception to a breach of the agreement. Although GMAAD's failure to obtain proper funding may have ultimately been a temporary situation, this does not render that failure any less of a breach of the agreement. Thus, GMAAD admitted in its attempted response to the request for admissions all the allegations necessary to establish a breach of the parties' settlement agreement. Even if the responses were allowed, the admissions are conclusive of the facts necessary to support the court's granting of summary judgment. The result reached by the trial court is not against the logic and effect of the circumstances and does not, therefore, amount to an abuse of discretion.

Although it must be acknowledged that the trial court may have, in its findings, utilized an inappropriate test, we are required to sustain the trial court even if its judgment is based upon an incorrect theory. *Howard v. H.J. Ricks Construction Co.* (1987), Ind.App., 509 N.E.2d 201; *Celina Mutual Insurance Co. v. Forister* (1982), Ind.App., 438 N.E.2d 1007, 1012. Since a summary judgment will be affirmed if sustainable on any theory or basis found in the record, it appears that even if GMAAD's attempted response to the request for admissions had been considered by the trial court, they would have established that there was no material issue of fact in dispute.

Thus, I see no need to remand to the trial court for application of the *Stewart* tests outlined in the majority opinion above for the reason that if we consider the attempted response to the requests for admissions, one can clearly see that the grant of summary judgment was appropriate.